[Civ. No. 14763. Fourth Dist., Div. One. May 9, 1977.]

CITY OF CORONADO, Plaintiff and Appellant, v.
CALIFORNIA COASTAL ZONE CONSERVATION COMMISSION,
Defendant and Respondent;
DEPARTMENT OF PARKS AND RECREATION,
Real Party in Interest and Respondent.

---

**COUNSEL**

Haskins, Lewis, Nugent & Newnham and Gerald J. Lewis for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, and Joel S. Moskowitz, Deputy Attorney General, for Defendant and Respondent and for Real Party in Interest and Respondent.

---

**OPINION**

**STANIFORTH, J.**—The California State Department of Parks and Recreation (Real Party) seeks to convert a day-use parking lot located at the Silver Strand State Beach in the City of Coronado to an overnight

camping area for use by approximately 115 recreational vehicles. The parking lot (#1) sought to be converted is directly across State Scenic Highway No. 75 from the posh residential community of Coronado Cays. Over the objection of the City of Coronado (City), the Real Party sought and obtained, after traversing an obstacle-strewn course, the necessary permit from the California Coastal Zone Conservation Commission (Coastal Commission).[1] The battle scene then moved to the superior court, where the City sought a peremptory writ of mandate (Code Civ. Proc. § 1094.5) directing the Coastal Commission to set aside its permit. The court refused to issue the writ of mandate, reasoning that (1) the permit-granting function of the Coastal Commission is quasi-legislative in nature and therefore the judicial review was limited to a determination of whether the Coastal Commission's action was "arbitrary, capricious or entirely lacking in evidentiary support"; (2) the Coastal Commission's failure to act upon the decision of the San Diego Regional Commission (Regional Commission) within the 60-day time limitation of section 27423, subdivision (b) did not result in a void act; (3) the California Environmental Quality Act (CEQA) was not violated by the issuance of the permit without first obtaining an environmental impact report (EIR); and, finally, (4) the findings of the Coastal Commission in issuing the permit in question were supported by substantial evidence. The City appeals the denial of the writ of mandate, contending the trial court erred in its determinations. We agree.

Preliminarily, we dispose of the question whether the Coastal Commission action on application for a permit is a quasi-legislative in nature as found by the trial court, in which event the decision of the Coastal Commission must be upheld unless it is found to be arbitrary, capricious or totally lacking in evidentiary support, or (b) quasi-judicial in nature, in which event the decision of the Coastal Commission is to be judicially reviewed by one of the two standards found in Code of Civil Procedure section 1094.5 subdivision (c).[2]

[1] The permit-granting procedure prescribed by the California Coastal Zone Conservation Act provides for notice and public hearing before the Regional Commission (Pub. Resources Code, § 27420)* for appeals to the Coastal Commission by an applicant or any person aggrieved by a permit approval (§ 27423, subd. (a)), for de novo public hearings by the Coastal Commission on appeals involving substantial issues (§ 27423, subd. (c)), and for judicial review of an action or decision of the Coastal Commission or Regional Commission by filing a petition for writ of mandate (§ 27424). The act on its face fully guarantees procedural due process to permit applicants as well as to persons aggrieved by a decision or action of the Coastal Commission or Regional Commission.

[2] The adjudicatory determinations by the Coastal Commission are subject to two possible rules of judicial review, depending upon whether the administrative decision

*Unless otherwise indicated, all references are made to the Public Resources Code.

The writ here sought had as its purpose the inquiry into the validity of a final order of the Coastal Commission. The permit was issued in a procedure which, by law, required a hearing, and a de novo hearing, at the Coastal Commission level. Evidence was required to be taken, and discretion in fact determination was vested in the Coastal Commission. The requisites of Code of Civil Procedure section 1094.5 review are met precisely by these actions. The procedures are essentially adjudicatory in nature, although the hearings do not have the trappings of judicial process. They are nonetheless adversary in fact. Competing interests are being determined. The aggrieved party has access to the courts. The Coastal Commission is engaged in applying rules to a specific set of existing facts. It is not engaged in the formulation of rules to be applied to all future cases, that litmus test of quasi-legislative function (*Strumsky* v. *San Diego County Employees Retirement Assn.*, 11 Cal.3d 28, 35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]). We join in a chorus of cases holding "beyond any doubt" the permit-issuing functions of the Coastal Commission are quasi-judicial in nature (*Natural Resources Defense Council, Inc.* v. *California Coastal Zone Conservation Com.*, 57 Cal.App.3d 76, 83 [129 Cal.Rptr. 57]; *Davis* v. *California Coastal Zone Conservation Com.*, 57 Cal.App.3d 700, 705, 707 [129 Cal.Rptr. 417]; *Patterson* v. *Central Coast Regional Com.*, 58 Cal.App.3d 833, 839, 841 [130 Cal.Rptr. 169]).

We need not examine the consequences of this procedural error, this wrong choice of standard of review by the trial court, in view of our conclusion that errors substantive in nature occurred which require reversal. To these critical issues we now attend.

The Coastal Commission did not act upon—"affirm, reverse or modify"—the decision of the Regional Commission within 60 days, as required by section 27423, subdivision (b). This section provides: "The commission may affirm, reverse, or modify the decision of the regional commission. If the commission fails to act within 60 days after notice of appeal has been filed, the regional commission's decision shall become final." The City contends the Coastal Commission issued a void permit when it reversed the decision of the Regional Commission

---

substantially affects a fundamental vested right. These are briefly referred to as the substantial evidence rule and the independent judgment rule. The importance of the determination of which of these two rules of review is applicable is not of significance in this case in view of our determinations of error in critical areas. Suffice to say that if there is a fundamental vested right which was substantially affected by the permit decision, then the independent judgment rule would be applicable. The trial court never reached this fork in the road. It mistakenly determined the function of the Coastal Commission to be quasi-legislative.

(denying that permit) in a time period beyond the statutory 60-day limit for decision. To understand the nature of the error committed, we must briefly examine the factual and procedural backdrop to the application for the permit.

On August 31, 1973, the Real Party applied for a permit from the Regional Commission to add water, electrical and sewer connections necessary for the proposed conversion of a day-use parking lot on an existing, publicly owned state beach (Silver Strand State Beach) to an overnight camping area for recreational vehicles. A two-page document, entitled "Environmental Statement on 1973-74 Budget Request Item," was prepared by the Real Party and submitted with the application. Hearing was held September 21, 1973, and a final vote was taken by the Regional Commission on October 5, 1973, unanimously granting the permit application. However, the Regional Commission invalidated the permit on September 20, 1974, due to inadequate public notice.

On October 25, 1974, the Real Party applied once again for a permit to convert parking lot #1 into an overnight campground site. The "Environmental Statement on 1973-74 Budget Request Item" was once again attached and the application included an explanation against the conversion of parking lot #4 (located one-half mile to the south and that far removed from the Coronado Cays) because lot #1 facilitates a better traffic flow and was the least used lot by the general public. On November 15, 1974, a public hearing was held. In a letter dated November 21, 1974, the Real Party agreed to the moving of the project to lot #4 in light of the local opposition to the conversion of lot #1. The Regional Commission's staff recommended the issuance of the permit for the campground to be located at the site of lot #4 rather than lot #1 as originally proposed. Nevertheless, on December 20, 1974, the Regional Commission again denied the permit.

The Real Party, being aggrieved, sent a notice of appeal to the Coastal Commission by telegram dated December 27, 1974. On January 13, 1975, the Real Party filed a second notice of appeal on the Coastal Commission's required form.[3] By letter dated February 10, 1975, the Real Party purported to waive the 60-day time limitation on the Coastal Commission's time to act on the appeal. The Coastal Commission held hearings

---

[3]Section 27420 makes the decision of the Regional Commission final after 10 working days. Unless the telegram sent is treated as a notice of appeal, the Real Party is faced with a final determination of its application for permit by the Regional Commission. We accept the telegram as substantive performance, as a reasonable alternative, to the Coastal Commission's form.

and reviewed the appeal, and on March 5, 1975 voted to issue the permit for lot #1.

The trial court determined the Real Party could waive the 60-day time requirement of section 27423, subdivision (b), and, as consequence, held the Coastal Commission's authorizing the issuance of the permit was a valid, lawful act.

The decision of the Coastal Commission issuing the permit was rendered March 5, 1975, nine days after the 60-day time limitation of section 27423, subdivision (b). Thus the Coastal Commission reversed the determination by the Regional Commission after it had "become final" unless the Real Party could waive the statutory directive of finality. To support its conclusion, the trial court relied upon *Klitgaard & Jones, Inc.* v. *San Diego Coast Regional Com.*, 48 Cal.App.3d 99, 111 [121 Cal.Rptr. 650], where the question was "whether conduct of Club, at a time within the 60-day period when the State Commission could have acted and was prepared to act, may estop Club from asserting a lack of jurisdiction and the finality of the Regional Commission's decision . . . ." (P. 111.) Said this court, at pages 112-113: "Whether rightly or wrongly, the State Commission has taken the position that the 60-day limit may be extended upon the request of the applicant for whose benefit the time limit was fixed. In good faith, the applicant here requested and obtained such extensions with full knowledge of the language of the statute and upon the express representation that the time limit would thereby be extended. Within the time limitation and the requested extensions, the State Commission acted expeditiously. In those circumstances Club is estopped to assert the failure of jurisdiction of the State Commission and the finality of the Regional Commission's decision."

Not only does *Klitgaard & Jones, supra,* rely upon the equitable principles of estoppel—a factual issue not here—but it rests upon a totally different factual matrix. In *Klitgaard,* the decision of the Regional Commission favored the Club. The Regional Commission had granted the Club's application for permit. The objectors to the permit appealed to the Coastal Commission. It was the Regional Commission decision *favoring* the Club which would have become final upon the nonaction of the Coastal Commission within 60 days. It was the *Club's right* to final judgment in their favor which they "waived" or were, by their acts, estopped to claim. Here the City prevailed at the Regional Commission level. The decision in its favor would become final by statutory declaration unless the Coastal Commission affirmed, reversed or

modified the Regional Commission's decision within the 60-day period. Thus it is the *City,* under *Klitgaard* rationale, which possesses a right to finality to waive. To waive a right, one must first possess a right to give up. Waiver is a voluntary relinquishment of a known right (*Craig* v. *White,* 187 Cal. 489 [202 P. 648]).

The Coastal Commission also relies upon case law interpreting statutes requiring administrative decisions to be made within a specified time period. They are not in point. In *Koehn* v. *State Board of Equalization,* 166 Cal.App.2d 109, 118-119 [333 P.2d 125], Business and Professions Code section 23086 was under scrutiny. It provided: "The Board shall enter its order within 60 days after the filing of the appeal." This was construed to be directory only and did not deprive the Board of jurisdiction to act after the 60-day period. Absent in the statute interpreted in *Koehn,* and cases cited by *Koehn,* is a clear legislative direction of finality of decision, of consequence that follows the failure to meet the time limit. ■ In point is *Rosenfield* v. *Vosper,* 70 Cal.App.2d 217, 223 [160 P.2d 842], where the court states: "It is a well settled rule that where the law prescribes the consequences that will follow the failure to do an act within a given time, the limitation is mandatory and not directory, and that the prescribed consequence cannot be defeated by performance of the act after the time allowed." ■ To concede the Coastal Commission's position on this point would cause us to defy a clear legislative directive of finality of the Regional Commission's orders. If the Real Party could waive, unilaterally, the consequences (finality of order) of delay beyond 60 days, the clear, explicit legislative purpose would be nullified. Neither the courts nor the Real Party have this authority. Speculation concerning the subjective, undisclosed intent of the legislators in enacting section 27423, subdivision (b) cannot authorize this court to overrule a clear, unambiguous and explicit direction of finality. We conclude the Coastal Commission was without jurisdiction to grant the permit here in contest after the decision of the Regional Commission denying such permit had become final by the expiration of the 60-day period within which the Coastal Commission was authorized to act.

■ The City's second contention of substantive error is that the Real Party, the California State Department of Parks and Recreation, failed to submit an EIR as required by CEQA (§ 21050 et seq.). Section 21100 provides: "All state agencies, boards, and commissions shall prepare, or cause to be prepared by contract, and certify the completion of an environmental impact report on any project they propose to carry out or approve which may have a significant effect on the environment. Such a report shall include a detailed statement setting forth the following:

"(a) The significant environmental effects of the proposed project.

"(b) Any significant environmental effects which cannot be avoided if the project is implemented.

"(c) Mitigation measures proposed to minimize the significant environmental effects including, but not limited to, measures to reduce wasteful, inefficient, and unnecessary consumption of energy.

"(d) Alternatives to the proposed project.

"(e) The relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity.

"(f) Any significant irreversible environmental changes which would be involved in the proposed project should it be implemented.

"(g) The growth-inducing impact of the proposed project.

"The report shall also contain a statement briefly indicating the reasons for determining that various effects of a project are not significant and consequently have not been discussed in detail in the environmental impact report."

The Coastal Commission fails initially to respond to the issue tendered. The Coastal Commission argued that *it* is not required to prepare an EIR in relation to its consideration of a permit application. The City urges this responsibility on the Real Party.

*Natural Resources Defense Council, Inc.* v. *California Coastal Zone Conservation Com., supra,* 57 Cal.App.3d 76, supports the position the Coastal Commission permit-granting activity does not require an EIR. The court in *Natural Resources* refused to invalidate some 15 permits authorized by the Coastal Commission for private construction of houses in a coastal area where development permits were required to be obtained. *Natural Resources Defense Council, Inc.* v. *California Coastal Zone Conservation Com., supra,* held, at page 90: "[T]he exhaustive staff report of the Commission together with that agency's findings of fact, although not so entitled, was in substance an environmental impact report prepared and considered by the Commission before the granting of the subject permits."

It was such an "informational document" as is required by section 21061. *Natural Resources,* at page 91, further held: "[T]he [Coastal Zone] Act (§ 27402) allows no permit until the Commission has found, on substantial evidence, that *'the development will not have any substantial adverse environmental or ecological effect'* (italics added). . . . Such a finding, in the context of the case before us, obviously renders the environmental impact report provisions of the Environmental Quality Act inapplicable."

*Natural Resources, supra,* did not consider the effect of adding section 21080.5 (Stats. 1975) to the Public Resources Code, but observed, the amendment "is inapplicable to the instant proceedings" (57 Cal.App.3d at p. 91, fn. 5). *Natural Resources* did "note" the federal cases relied upon by the Coastal Commission here (p. 91, fn. 6). Thus *Natural Resources* concluded the EIR requirement would be redundant; the Coastal Commission prepares a functional equivalent to the CEQA EIR.

To buttress its position, the Coastal Commission argues CEQA is a statute "of general applicability," whereas the Coastal Act is a specific statute with specific jurisdiction, specific duties. It is reasoned the commissions are the only agents specifically and exclusively charged with maintaining, preserving and restoring the environment of the California Coastal Zone. The Coastal Commission asserts that to prepare an informational document such as the EIR would be redundant, unnecessarily duplicative, and an unnecessary expenditure of public funds for the performance of an essentially idle act. In further support of its contention that an EIR is not required, the Coastal Commission cites numerous cases from the federal jurisdiction interpreting the National Environmental Policy Act (NEPA): *International Harvester Company* v. *Ruckelshaus,* 478 F.2d 615, 650 [155 App.D.C. 411]; *Duquesne Light Co.* v. *Environmental Protection Agcy.,* 481 F.2d 1, 9; *Portland Cement Association* v. *Ruckelshaus,* 486 F.2d 375, 383 [158 App.D.C. 308]. These cases hold federal environmental agencies exempt from NEPA EIR requirements.

We now examine these cases, these contentions, in depth. The California Coastal Zone Conservation Act (Coastal Act) is silent on the question whether an EIR, as prescribed by CEQA, is required in connection with the Coastal Commission's permit-granting function. Absent an express exemption, is there an implied exemption? An examination of the pertinent statutes points to an unqualified no.

CEQA, section 21000, subdivision (g), expresses the intent of the Legislature that "*all* agencies of the state government which regulate activities . . . which are found to affect the quality of the environment, shall regulate . . . so that major consideration is given to preventing environmental damage [italics ours]." Section 21100 provides: "*All* state . . . commissions shall prepare, or cause to be prepared by contract, and certify the completion of an environmental impact report on any project they propose to carry out or approve which may have a significant effect on the environment [italics ours]." Section 21001, subdivision (g) declares the state policy to "[r]equire governmental agencies at *all* levels to consider qualitative factors as well as economic and technical factors and long-term benefits and costs, in addition to short-term benefits and costs and to consider alternatives to proposed actions affecting the environment [italics ours]." Section 21082 requires: "*All* public agencies shall adopt by . . . rule, or regulation, objectives, criteria, and procedures for the evaluation of projects and preparation of environmental impact reports pursuant to this division [italics ours]." Section 21106 provides: "*All* state agencies . . . and commissions shall request in their budgets the funds necessary to protect the environment in relation to problems caused by their activities [italics ours]." This broad language used compels the conclusion the Legislature intended that *all* state commissions must meet CEQA requirements. In aid of this conclusion, we contrast the broad, all-encompassing inclusion of state agencies, commissions, within the requirements of CEQA with the *specific exemptions* from CEQA requirements set forth in sections 21083.5, 21084, 21085, 21172, and Water Code section 13389. ■ None of these exemptions or classes of exemptions applies to the permit-granting function of the Coastal Commission or to the project proposed by the Real Party.

The familiar maxim of statutory construction is applicable. When a statute expresses certain exceptions to a general rule, other exceptions are necessarily excluded (*Collins* v. *City & Co. of S. F.,* 112 Cal.App.2d 719, 731 [247 P.2d 362]; *Wildlife Alive* v. *Chickering,* 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537]). Therefore, we conclude the specific statutory exemptions to the broad, all-inclusive ambit of CEQA requirements evince a legislative intent contrary to any implied exemption from EIR requirements for the Coastal Commission, when engaged in its permit-granting function.

■ Further, in search of legislative intent, we note the California Legislature, in 1975, amended CEQA by enactment of section 21080.5 (effective Jan. 1, 1976). This amendment applies to agencies such as

the Coastal Commission, which has as its principal purpose the protection of the environment of this state. This amendment authorizes environmentally oriented agencies to be exempt from the requirement of filing the full-scale EIR only if they submit an abbreviated environmental review complying with the provisions of the amendment. This exemption from the requirement of a full-scale EIR is available to the agency "provided that the Secretary of the Resources Agency [Secretary] has certified the regulatory program pursuant to this section." (§ 21080.5, subd. (a).)

In order to qualify to use this "functional equivalent" of a full-scale EIR, the Coastal Commission must adopt and adhere to a regulatory program determined by the Secretary which includes the following: " . . . written plans of proposed projects with alternatives and mitigation measures available to minimize any significant environmental impact (Pub. Resources Code, § 21080.5, subd. (b)(3)(i)); consultation by the agency with other public officers and agencies (§ 21080.5, subd. (b)(2)(iii)); notice to the public and opportunity for public review and comment (§ 21080.5, subd. (b)(2)(vi)); written responses by the agency to 'significant environmental points raised during the evaluation process' (§ 21080.5, subd. (b)(2)(iv)); and a requirement that a project be disapproved if there are feasible alternatives to the proposed action which 'would substantially lessen any significant adverse impact' on the environment (§ 21080.5, subd. (b)(2)(i))." (*Wildlife Alive* v. *Chickering, supra*, 18 Cal.3d 190, 196 [132 Cal.Rptr. 377, 553 P.2d 537].)

Although section 21080.5 was enacted after the date of the permit granted by the Coastal Commission here in question, it is a clear expression of legislative intent to carve out specific exemptions to CEQA's broad coverage. The adoption of section 21080.5 implies a rejection of other exemptions not expressly granted in CEQA.

Further, section 21080.5 does not extend CEQA to new areas. "We must assume, therefore, that the Legislature intended to modify a preexisting duty, not to enact a statute that would have no or little effect." (*Wildlife Alive* v. *Chickering, supra*, 18 Cal.3d 190, 197.) If the Coastal Commission was already exempt by implication from the EIR requirements of CEQA as an agency having environmental responsibilities, then the enactment of section 21080.5 would be but an exercise in futility. We do not so presume.

█ Further, the EIR requirements of CEQA, for either a full EIR or the abbreviated EIR of section 21080.5, are not met or matched by the procedures set out and required of the Coastal Commission in its permit-granting function. We compare the five essential elements required in the abbreviated procedures of section 21080.5, quoted above, with the Coastal Commission's requirements. The Coastal Commission is required to obtain exhaustive staff reports, hold hearings, make findings of fact. There is the opportunity for public participation in the permit hearings. Further, section 27402 of the Coastal Act allows no permit to issue until the Coastal Commission has found on substantial evidence that the development will not have any substantial adverse or ecological effect.

However, there is no requirement of the Coastal Commission that proposed projects contain alternatives and mitigation measures available to minimize significant environmental impact. The requirement is lacking of consultation by the agency with other public officers and agencies. While notice to the public of an opportunity for public review and comment is available of course under the Coastal Act, yet the requirement of written responses by the agency to significant environmental points raised during the evaluation process is not present. Nor is there the requirement that the project be disapproved if there are feasible alternatives which would substantially lessen any significant adverse impact on the environment. *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247, 263, footnote 8 [104 Cal.Rptr. 761, 502 P.2d 1049], points out that one of the major functions of the EIR is to assure that all reasonable alternatives to proposed projects are thoroughly assessed by responsible officialdom. *County of Inyo* v. *Yorty,* 32 Cal.App.3d 795, 801, 811 [108 Cal.Rptr. 377], notes an important function of the EIR is to prove information from which the work of an agency can be evaluated by the public and by the courts. Following its issuance of an EIR, judicial review may be invoked to determine whether the agency has abused its discretion.

The foregoing analysis of the requirements of CEQA, in contrast to the permit-granting procedures required for the commission, leads to one conclusion. They were not intended as a substitute for compliance with CEQA. This conclusion as regards the Coastal Commission is buttressed by decisions holding CEQA EIR requirements applicable to other public agencies, boards or commissions charged with environmental protection responsibilities (see *Bozung* v. *Local Agency Formation Com.,* 13 Cal.3d 263 [118 Cal.Rptr. 249, 529 P.2d 1017]; *Wildlife Alive* v.

*Chickering, supra,* 18 Cal.3d 190; *Natural Resources Defense Council, Inc.* v. *Arcata Nat. Corp.,* 59 Cal.App.3d 959 [131 Cal.Rptr. 172]).

*Wildlife Alive, supra,* meets head-on the argument that the construction placed by the federal courts upon provisions of NEPA should be followed in our interpretation of CEQA. The federal cases uniformly hold there is an implied exemption from NEPA's EIR requirements where the particular federal agencies furnish a "functional equivalent" to the EIR requirement (see *Portland Cement Association* v. *Ruckelshaus, supra,* 486 F.2d 375).

In *Wildlife Alive* v. *Chickering, supra,* 18 Cal.3d 190, 202, the California Supreme Court said: "Finally, a more compelling reason leads us to reject the functional equivalence test in California. Federal judicial interpretations of NEPA are relevant to our consideration only to the extent that the provisions of NEPA may be fairly said to parallel CEQA. The significant addition to CEQA previously discussed, section 21080.5, has no federal analogue. This section, by providing an alternative to the EIR requirement of CEQA for agencies with environmental responsibilities, is in effect a statutory version of the judicially created federal functional equivalence doctrine. Thus, insofar as CEQA may provide an exemption for agencies with environmental responsibilities, section 21080.5 rather than federal precedent must define the scope of this exemption."

 We conclude that the permit issued by the Coastal Commission, without compliance with the EIR requirements of CEQA, more than 60 days after the notice of appeal from the Regional Commission's decision was filed, is void. In light of these substantive errors compelling reversal, and direction to the trial court to issue its writ of mandate as prayed, we need not examine into the further contentions concerning lack of evidentiary support for the Coastal Commission's decision and charge of denial of due process in the procedures of the Coastal Commission.

We do, however, note, for the guidance of the Coastal Commission, the two-page environmental document submitted to the Regional Commission does not meet CEQA's EIR requirements. This document resembles an EIR as mist resembles a Colorado cloudburst. We do not determine that the Coastal Commission is the "lead agency." This question has not been raised, briefed or considered. The EIR should be

prepared as early in the planning process as possible to enable environmental considerations to influence the decision (*Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d 263, 282-283; Cal. Admin. Code, tit. 14, §§ 15065, subd. (c), 15013).

Judgment is reversed with directions to the trial court to issue a writ of mandate as prayed.

Brown (Gerald), P. J., and Cologne, J., concurred.