224 Cal.App.3d 696 (1990)
273 Cal. Rptr. 748
OUTDOOR RESORTS/PALM SPRINGS OWNERS' ASSOCIATION, Petitioner,
v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD et al., Respondents.
Docket No. E007958.
Court of Appeals of California, Fourth District, Division Two.
October 11, 1990.
*699 COUNSEL
Schlecht, Shevlin & Shoenberger and Allen O. Perrier for Petitioner.
John K. Van de Kamp, Attorney General, Melvin R. Segal, Kathleen B.Y. Lam and Beth Faber, Deputy Attorneys General, for Respondents.
OPINION
DABNEY, J.
Outdoor Resorts/Palm Springs Owners' Association (Owners' Association) petitions for a writ of review, challenging the Alcoholic Beverage Control Appeals Board's (Board) denial of Owners' Association's request for a duplicate license. Owners' Association contends that the Board erred in interpreting the term "duplicate license" to mean a separate license and in resolving a conflict in the controlling statutes in a manner which nullified certain of their provisions. Owners' Association also claims that the Department of Alcoholic Beverage Control (Department) should be ordered to issue a duplicate license because it failed to act within statutory time limits.

FACTUAL AND PROCEDURAL HISTORY
Owners' Association is a recreational vehicle resort and country club similar to a condominium project. The owners of the 1,213 separate lots within the project are members of Owners' Association and share ownership of the common areas, including private streets, clubhouses and recreational facilities. Owners' Association holds a club liquor license under which it operates a bar in one of those clubhouses.
Owners' Association applied to the Department for a duplicate type-51 clubhouse license which would allow on-site sale of liquor to Owners' Association's members and their guests at a second clubhouse in the project. The application was denied. Following a hearing, the administrative law judge *700 (ALJ) issued a proposed decision on May 3, 1989, holding that Owners' Association was entitled to the duplicate license. However, on June 29, 1989, the Department notified Owners' Association that it rejected the proposed decision and would decide the case under Government Code section 11517, subdivision (c).[1] At the Department's invitation, Owners' Association filed a written argument to support its position. On December 1, 1989, the Department denied the application on the ground that Business and Professions Code section 23430[2] prohibits the issuance of more than one club license to any club. Owners' Association appealed the denial to the Board. Following a hearing, the Board affirmed the decision of the Department on March 8, 1990. The Board stated, "Business and Professions Code § 23430 prohibits the Department from issuing more than one Club License to any club. A duplicate license, if issued to a club licensee would constitute more than one license. There is no statute authorizing the Department to issue a duplicate Club License."

DISCUSSION
(1) 1. Standard of Review. Under article XX, section 22 of the California Constitution, the Department is vested with the enforcement and administration of the Alcoholic Beverage Control Act (§ 23000 et seq.). Harris v. Alcoholic Bev. etc. Appeals Bd. (1965) 238 Cal. App.2d 24, 27 [47 Cal. Rptr. 424], fn. omitted.) Unless the Department proceeds without jurisdiction, acts in a manner contrary to law, or makes findings unsupported by substantial evidence, we must sustain its discretionary decisions. (Id., at pp. 27-28.) However, the proper interpretation of a statute is a legal question, the resolution of which ultimately rests with the court. (Carmona v. Division of Industrial Safety (1975) 13 Cal.3d 303, 310 [118 Cal. Rptr. 473, 530 P.2d 161].)
*701 (2a) 2. Applicable Statutes. Owners' Association holds a club license under section 23430, which states, "The department may issue one club license to any club as defined in this article." Owners' Association contends that as a club licensee, it is entitled to a duplicate license as a matter of law under sections 23431 and 24042. Section 23431 provides, "The holder of a club license may exercise all of the rights and privileges permitted by an on-sale general license but may sell and serve alcoholic beverages for consumption within the licensed establishment only to bona fide members of the club and their bona fide guests...." (Italics added.) Section 24042 provides, "Any licensee under an on-sale general license ... who maintains upon or within the premises for which the license is issued more than one room in which there is regularly maintained a fixed counter or service bar at which distilled spirits are served to members of the public for consumption within the licensed premises shall obtain from the department, and the department may upon request issue, a duplicate of his original license for each [such] room, ..."
Owners' Association assumes that a duplicate on-sale general license is a right or privilege permitted by an on-sale general license. To determine the scope of the term "rights and privileges," we review the overall statutory scheme for the regulation of the sale of alcoholic beverages. (3) "[A] specific provision should be construed with reference to the entire statutory system of which it is a part, in such a way that the various elements of the overall scheme are harmonized. [Citation.]" (Bowland v. Municipal Court (1976) 18 Cal.3d 479, 489 [134 Cal. Rptr. 630, 556 P.2d 1081].)
(2b) Section 23355 states, "Except as otherwise provided in this division and subject to the provisions of Section 22 of Article XX of the Constitution, the licenses provided for in Article 2 of this chapter [chapter 3] authorize the person to whom issued to exercise the rights and privileges specified in this article [article 3] and no others at the premises for which issued during the year for which issued." (Italics added.) (4) "It is a generally accepted tenet of statutory construction that the same words used in different statutes that are in pari materia are to be given the same meaning. [Citations.]" (People v. Hill (1980) 103 Cal. App.3d 525, 533, fn. 4 [163 Cal. Rptr. 99].) (2c) Thus, rather than having the expansive meaning which Owners' Association proposes, the term "rights and privileges" in section 23431 has a specific limited meaning. Within article 3, section 23399 discusses on-sale general licenses: "An on-sale general license authorizes the sale of beer, wine, and distilled spirits for consumption on the premises where sold...." (§ 23399.) A duplicate license is not listed as one of the rights or privileges of an on-sale general licensee within article 3.
*702 Furthermore, our narrow interpretation of the term "rights and privileges" eliminates an apparent conflict between other provisions of the statutory system. On the one hand, section 23431 states that holders of club licenses have all the rights and privileges of holders of general on-sale licenses, with exceptions not relevant to the facts of this case, and under other provisions of the act, such a licensee may obtain a duplicate license for additional rooms in the licensed premises. On the other hand, section 23430 states that only one club license may be issued to a particular club.
If "rights and privileges" means only the limited rights listed in article 3, no conflict arises between sections 23430 and 23431. We conclude that the Board correctly determined that the Department is not authorized to issue a duplicate license to a club license holder.
3. Timeliness of Decision. Owners' Association asserts that the ALJ's proposed decision became final because the Department did not reject it within statutory time limits.
(5) a. Thirty-day Limitation. Government Code section 11517, subdivision (b) requires the ALJ to submit a proposed decision to the agency, which may adopt the proposed decision in whole or in part. "Thirty days after receipt of the proposed decision, a copy of the proposed decision shall be filed by the agency as a public record and a copy shall be served by the agency on each party and his or her attorney." (Ibid.)
The ALJ filed her proposed decision with the Department on May 8, 1989, but the Department did not notify Owners' Association until June 29, 1989 that it rejected the proposed decision. The Board concedes that the 30-day limitation in section 11517, subdivision (b) was not followed. However, the Board contends that its exceeding the 30-day limitation did not deprive it of jurisdiction in the matter.
Generally, provisions of statutes that establish a time within which an act is to be done are "`directory rather than mandatory and jurisdictional, unless a contrary intent is clearly expressed....'" (Woods v. Department of Motor Vehicles (1989) 211 Cal. App.3d 1263, 1267 [259 Cal. Rptr. 885].) A time limitation is usually treated as merely directory "`"unless a consequence or penalty is provided for failure to do the act within the time commanded."'" (Ibid.) In Woods, the court examined a section of the Vehicle Code which stated that the Department of Motor Vehicles "shall" conduct a hearing within 30 days of demand. The court ruled that because the statute in question did not provide any consequence or penalty for *703 failure to act within the time specified, the time limitation should be deemed merely directory.
Likewise, Government Code section 11517, subdivision (b) does not mention any penalty for an agency's failure to act within the specified time. The 30-day limitation is merely directory.
Moreover, the rule Owners' Association proposes would create a conflict with section 11517, subdivision (d), which provides, "The proposed decision shall be deemed adopted by the agency 100 days after delivery to the agency by the Office of Administrative Hearings, unless within that time the agency commences proceedings to decide the case upon the record, ..." (Italics added.) Thus, we conclude that the Department did not lose jurisdiction when it failed to observe the 30-day limitation mentioned in the statute, and the ALJ's proposed decision did not automatically become final after 30 days.
Owners' Association argues nonetheless that failure to enforce the time limitation by deeming its application automatically approved when the time limitation was exceeded would contravene the purpose of the statute, which is to expedite administrative decision making. The cases on which Owners' Association relies are distinguishable. In Gamm v. Board of Medical Quality Assurance (1982) 129 Cal. App.3d 34, 37-38 [181 Cal. Rptr. 23], the statute at issue explicitly stated the punitive consequence of the agency's failure to act.
Also inapposite are cases Owners' Association cites in which courts have held that late filing of a notice of appeal from an agency decision is a jurisdictional defect. Those cases do not deal with obligations of agencies to meet prescribed time limits.
(6) b. One-hundred-day Limitation. Owners' Association also contends that the Department failed to take final action within 100 days after the ALJ's proposed decision was filed with the Department. Government Code section 11517, subdivision (d) states, "The proposed decision shall be deemed adopted by the agency 100 days after delivery to the agency by the Office of Administrative Hearings, unless within that time the agency commences proceedings to decide the case on the record, ..." The Department acted well within the 100-day period when on June 29, 1989, it rejected the proposed decision of the ALJ and commenced proceedings to decide the case on the record by ordering a transcript and requesting written arguments.
*704 The statute further provides, "In a case where the agency itself hears the case, the agency shall issue its decision within 100 days of submission of the case. In a case where the agency has ordered a transcript of the proceedings, the 100-day period shall begin upon delivery of the transcript." (Gov. Code, § 11517, subd. (d).) The transcript was delivered on August 29, 1989, and the Department issued its final decision on December 1, 1989, well before the time had run.

DISPOSITION
The decision of the Board is affirmed; writ denied.
Hollenhorst, Acting P.J., and Timlin, J., concurred.
NOTES
[1] "If the proposed decision is not adopted as provided in subdivision (b), the agency itself may decide the case upon the record, including the transcript, with or without taking additional evidence, or may refer the case to the same administrative law judge to take additional evidence. By stipulation of the parties, the agency may decide the case upon the record without including the transcript. If the case is assigned to an administrative law judge he or she shall prepare a proposed decision as provided in subdivision (b) upon the additional evidence and the transcript and other papers which are part of the record of the prior hearing. A copy of the proposed decision shall be furnished to each party and his or her attorney as prescribed in subdivision (b). The agency itself shall decide no case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself. If additional oral evidence is introduced before the agency itself, no agency member may vote unless the member heard the additional oral evidence." (Gov. Code, § 11517, subd. (c).)
[2] All statutory references are to the Business and Professions Code unless otherwise indicated.