[No. D016270. Fourth Dist., Div. One. Jan. 15, 1993.]

CHRYSLER CORPORATION, Plaintiff and Respondent, v.
NEW MOTOR VEHICLE BOARD, Defendant and Appellant;
LA MESA DODGE, INC., et al., Real Parties in Interest and Appellants.

COUNSEL

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry G. Ullerich, Assistant Attorney General, Martin H. Milas and Thomas Scheerer, Deputy Attorneys General, for Defendant and Appellant.

George John Murfey and Robert D. Moldenhauer for Real Parties in Interest and Appellants.

Manning, Leaver, Bruder & Berberich and Halbert B. Rasmussen as Amici Curiae on behalf of Real Parties in Interest and Appellants.

Baker & Hostetler, McCutchen Black, Franklin H. Wilson, Michael M. Johnson and Fredric S. Abrolat for Plaintiff and Respondent.

OPINION

**TODD, J.**—On this appeal from a judgment granting a petition of Chrysler Corporation (Chrysler) for a peremptory writ of mandate under Code of Civil Procedure section 1094.5, we are presented with a question of statutory construction concerning the directory or mandatory effect, and the meaning of, the Vehicle Code[1] section 3067 phrase: "If the board fails to act within 30 days after such hearing, within 30 days after the board receives a proposed decision where the case is heard before a hearing officer alone, or within such period as may be necessitated by Section 11517 of the Government Code or as may be mutually agreed upon by the parties, then the proposed action shall be deemed to be approved."

Here, the New Motor Vehicle Board (Board) commenced processing a decision of an administrative law judge (ALJ) conditionally approving a Dodge dealership's move to a different location by setting the matter for review and consideration at a date within 30 days of the Board's receipt of the ALJ's proposed decision. On the 31st day after it received the proposed decision, the Board issued a notice of board action stating that 5 days earlier it had "considered the proposed decision as well as the administrative record . . . . After such consideration, the Board continued this matter to be again considered at the next meeting of the Board in order to allow further review of the evidence submitted at the evidenciary [sic] hearing on these protests." Although the Board held additional meetings, received information from Chrysler nearly two months later, caused the ALJ to take additional evidence on certain matters and issued its decision denying the dealership move within thirty days after the ALJ submitted supplemental

---

[1] All statutory references are to the Vehicle Code unless otherwise specified.

findings of fact to the Board, the trial court held the quoted statutory language required the "proposed action," meaning the ALJ's decision, to be deemed approved. The trial court construed "act" in the phrase "fails to act" as referring to the Board's decision. Thus, since the Board had not made its decision within 30 days of its receipt of the ALJ's proposed decision (and under Gov. Code, § 11517, subd. (d), it did not rule within 100 days of receipt of the transcripts from the ALJ), the trial court concluded the Board failed to act within the time required and ordered a peremptory writ of mandate commanding the Board to set aside its decision and instead enter the proposed decision of the ALJ. The court also ruled the Board did not comply with its duty to rule within 100 days of receipt of the transcripts of the hearing by the ALJ, and this resulted in the ALJ's proposed decision being deemed approved.

We have concluded the conduct of the Board within 30 days of its receipt of the ALJ's proposed decision was an "act" within the meaning of the word in the phrase "fails to act." Accordingly, the "deemed approved" provision of section 3067, relating to the "proposed action," did not become applicable. We thus reverse the judgment, order the court to vacate its order granting the writ and remand the case for further proceedings in administrative mandamus, including formally determining whether substantial evidence supports the Board's decision.

## FACTS[2]

On February 28, 1989, Chrysler gave written notice to real parties in interest and appellants, La Mesa Dodge and Kearney Mesa Dodge[3] (Protesting Parties), pursuant to section 3062, that it wished to establish a Dodge dealership in San Diego's Mission Valley. At the time, Chrysler had a failing Dodge dealership in the Point Loma area under the proprietorship of Alan Johnson. Robert Townsend owned property 2.8 miles to the east, in Mission Valley. It was on this property that Chrysler sought to establish a dealership.

The Protesting Parties are both within 10 miles of the proposed dealership. Pursuant to section 3062, both Protesting Parties protested to the Board. On October 13, 1989, the ALJ issued a proposed decision in the consolidated matters, denying the protests and permitting the establishment of the Dodge dealership on the Townsend property. On the same date, the ALJ submitted his findings of fact, determination of issues and proposed decision to the Board.

---

[2]With some editing the statement of facts is taken from the trial court's statement of decision and the parties' stipulation of facts.

[3]La Mesa Dodge, Inc., is doing business as Carl Burger's Dodge World. Tri-City Leasing, Inc., is doing business as Kearney Mesa Dodge.

On November 9, 1989, the Board reviewed and discussed the proposed decision and heard statements from the attorneys for the Protesting Parties and Chrysler.[4] On November 14, 1989, the Board issued a "Notice of Board Action," saying "On November 9, 1989 the New Motor Vehicle Board considered the proposed decision as well as the administrative record in the above-entitled matters." After such consideration, the Board continued the matter to be again considered at its next meeting in order to allow further review of the evidence submitted at the evidentiary hearings on these protests.

On December 13, 1989, the Board heard further statements from the attorneys for the Protesting Parties and for Chrysler and ordered the parties "to provide to the Board the planning potential assigned or to be assigned to the proposed dealership . . . ." This information was to be provided to the Board by way of declaration under penalty of perjury no later than January 2, 1990. Chrysler filed such a declaration on January 5, 1990.

On April 3, 1990, the Board remanded the protests to the ALJ for the purpose of taking additional evidence on (1) Chrysler's planning potentials for San Diego dealerships and method for determining planning potential, (2) the facilities and capital that Chrysler will require of the proposed dealership, (3) Chrysler's unit sales figures for national, California and San Diego levels, and (4) whether the proposed dealership will be able to comply with local governmental restrictions. The remand hearings were held on May 7 and May 11, 1990.

The ALJ submitted supplemental findings of fact to the Board on June 25, 1990. On July 20, 1990, the Board issued a decision sustaining the protests.

---

[4]The Board's decision at issue in this case recites that it also rejected the ALJ's proposed decision at the November 9, 1989, hearing of the Board.

The Board is charged with determining whether good cause exists (see §§ 3062, subd. (a), 3066, subd. (b)), and in this connection, section 3063 provides:

"In determining whether good cause has been established for not entering into or relocating an additional franchise for the same line-make, the board shall take into consideration the existing circumstances, including, but not limited to, all of the following:

"(a) Permanency of the investment.

"(b) Effect on the retail motor vehicle business and the consuming public in the relevant market area.

"(c) Whether it is injurious to the public welfare for an additional franchise to be established.

"(d) Whether the franchises of the same line-make in that relevant market area are providing adequate competition and convenient consumer care for the motor vehicles of the line-make in the market area which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of vehicle parts, and qualified service personnel.

"(e) Whether the establishment of an additional franchise would increase competition and therefore be in the public interest."

The trial court held the Board "did not 'act' within 30 days of receipt of the proposed decision. The Board did not render a decision within 30 days but instead deferred decision on the matter within that period." The court cited *Klitgaard & Jones, Inc.* v. *San Diego Coast Regional Com.* (1975) 48 Cal.App.3d 99, 110 [121 Cal.Rptr. 650], as instructing "that 'to act' means, in essence, to render, and not to defer, a decision."

The trial court found there was no mutual agreement to an extension of time and that the Board did not meet the requirements of Government Code section 11517 which "appears to be mandatory as it provides for a conse- quence—adoption of the proposed decision—for a failure to do the act within the time commanded. *Woods* v. *Department of Motor Vehicles* (1989) 211 Cal.App.3d 1263 [259 Cal.Rptr. 885]."

With respect to Government Code section 11517, including its rule under subdivision (d) that the ALJ's proposed decision shall be deemed adopted 100 days after delivery of the proposed decision to the agency "unless within that time the agency commences proceedings to decide the case upon the record . . . or the agency refers the case to the administrative law judge to take additional evidence," the trial court stated: "On November 9, 1989, the Board began a lengthy course of proceedings to decide the case on the record. By that date, the Board was in receipt of the transcript of the proceedings before the ALJ. The Board may be said to have commenced proceedings within the meaning of [Government Code] § 11517(d) no later than November 9, 1989. This is well within the 100 day time frame for commencement of proceedings set forth in the first sentence of [Government Code] § 11517(d). This deadline having been met, no penalty accrues.

"That section contains an additional time constraint: In a case where the agency itself hears the case, the agency must issue its decision within 100 days of submission of the case. *Outdoor Resorts Etc. Owners' Ass'n* v. *Alcoholic Beverage Control Appeals Bd.* (1990) 224 Cal.App.3d 696 [273 Cal.Rptr. 748]. In a case where the agency has ordered a transcript of the proceedings, the 100-day period shall begin upon delivery of the transcript. *Id.* If the agency finds that a further delay is required by special circum- stances, it shall issue an order delaying the decision for no more than 30 days and specifying the reasons therefor.

"Here the Board received all relevant transcripts by August 30, 1989 (before the proposed decision). Clearly the Board did not rule within 100 days of receipt of the transcripts nor did it issue an order delaying decision and specifying the reasons therefor. Had such an order issued, the decision could have been delayed by no more than 30 days.

"Government Code § 11517(d), second sentence, contains no consequence or penalty for failure to issue the decision within 100 days of delivery of the

transcript. That being said, Vehicle Code § 3067 *does* provide for such a consequence if the Board fails to act within 'such period as may be necessitated by Section 11517 of the Government Code'. This renders mandatory what otherwise would be directory. The Board failed to render a decision within 100 days of delivery of the transcript. The clear consequence of such a failure to comply with Section 11517(d) is that the proposed action is deemed approved, per Vehicle Code § 3067."

The court cited *City of Coronado* v. *California Coastal Zone Conservation Com.* (1977) 69 Cal.App.3d 570 [138 Cal.Rptr. 241], in which, under Public Resources Code former section 27423, subdivision (b), this court held the commission acted in excess of its jurisdiction in granting a permit after the expiration of the 60-day prescribed time limit. The trial court held Chrysler had not waived "its right to assert the statutory time limit and resulting failure of jurisdiction" by Chrysler's appearances before the Board and compliance with Board orders, and concluded its statement of decision: "Vehicle Code § 3067 is more liberal than the Public Resources Code section at issue in *Coronado*, as it provides three separate, alternative time periods. However, as noted above, the Board's decision was untimely under all three periods. Good cause for such a delay has not been suggested. The delay was not inconsequential.

"The Real Parties herein cannot waive, unilaterally, the right to finality. *City of Coronado, supra.* If the Real Parties could waive such a consequence, the legislative purpose would be frustrated. The economic effects of such a delay may benefit one or more of the parties to the protest. The Board does not exist to serve the parties, but to serve the public welfare. The public is disserved by an unexplained and unreasoned delay in such proceedings."

Thus, the court issued the writ of mandate directing the Board to vacate its decision and enter the proposed decision of the ALJ in Chrysler's favor, allowing the franchise relocation.

## DISCUSSION[5]

The sole issue of concern in this case is the meaning and effect of the sentence in section 3067,[6] "If the board fails to act within 30 days after such hearing, within 30 days after the board receives a proposed decision where

---

[5] We are aided in our analysis and decision by a brief of amicus curiae California Motor Car Dealers Association in support of the Protesting Parties.

[6] The full text of section 3067 is: "The decision of the board shall be in writing and shall contain findings of fact and a determination of the issues presented. The decision shall sustain, conditionally sustain, overrule, or conditionally overrule the protest. Any conditions imposed by the board shall be for the purpose of assuring performance of binding contractual

the case is heard before a hearing officer alone, or within such period as may be necessitated by Section 11517 of the Government Code . . . then the proposed action shall be deemed to be approved." Under section 3066, subdivision (a), Government Code section 11517, among other specified provisions of the Administrative Procedure Act, is applicable to hearings on a protest made pursuant to section 3062. Section 11517 of the Government Code provides, in pertinent part: "(b) If a contested case is heard by an administrative law judge alone, he or she shall prepare within 30 days after the case is submitted a proposed decision in such form that it may be adopted as the decision in the case. The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision.

"Thirty days after receipt of the proposed decision, a copy of the proposed decision shall be filed by the agency as a public record and a copy shall be served by the agency on each party and his or her attorney.

"(c) If the proposed decision is not adopted as provided in subdivision (b), the agency itself may decide the case upon the record, including the transcript, with or without taking additional evidence, or may refer the case to the same administrative law judge to take additional evidence. . . . If the case is assigned to an administrative law judge he or she shall prepare a proposed decision as provided in subdivision (b) upon the additional evidence and the transcript and other papers which are part of the record of the prior hearing. A copy of the proposed decision shall be furnished to each party and his or her attorney as prescribed in subdivision (b). The agency itself shall decide no case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself. . . .

"(d) *The proposed decision shall be deemed adopted by the agency 100 days after delivery to the agency by the Office of Administrative Hearings, unless within that time the agency commences proceedings to decide the case upon the record,* including the transcript, or without the transcript where the parties have so stipulated, *or the agency refers the case to the administrative law judge to take additional evidence.* In a case where the agency itself hears the case, the agency shall issue its decision within 100 days of submission of

---

agreements between franchisees and franchisors or otherwise serving the purposes of this article. If the board fails to act within 30 days after such hearing, within 30 days after the board receives a proposed decision where the case is heard before a hearing officer alone, or within such period as may be necessitated by Section 11517 of the Government Code or as may be mutually agreed upon by the parties, then the proposed action shall be deemed to be approved. Copies of the decision shall be delivered to the parties personally or sent to them by registered mail, as well as to all individuals and groups, which have requested notification by the board of protests and decisions by the board. The decision shall be final upon its delivery or mailing and no reconsideration or rehearing shall be permitted."

the case. In a case where the agency has ordered a transcript of the proceedings, the 100-day period shall begin upon delivery of the transcript. If the agency finds that a further delay is required by special circumstances, it shall issue an order delaying the decision for no more than 30 days and specifying the reasons therefor. The order shall be subject to judicial review pursuant to Section 11523." (Italics added.)

■ The general rule is that "requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed. [Citations.]" (*Edwards* v. *Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365].) *Edwards* points out the courts have expressed a variety of tests for determining whether the time requirements are directory or mandatory—some looking at the likely consequences of holding a particular time limit mandatory and attempting to ascertain whether those consequences would defeat or promote the purpose of the enactment; and others suggesting a time limit is merely directory " 'unless a consequence or penalty is provided for failure to do the act within the time commanded.' [Citations.]" (*Ibid.*)

The trial court and Chrysler view this case as controlled by the last-quoted rule, i.e., since a consequence is provided for in section 3067, the time limitations are mandatory. But we are cautioned, "[T]here is no simple, mechanical test for determining whether a provision should be given 'directory' or 'mandatory' effect. ■ 'In order to determine whether a particular statutory provision . . . is mandatory or directory, the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent. In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. [Citation.] When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose [citation]. . . .' " (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 909-910 [136 Cal.Rptr. 251, 559 P.2d 606], fn. omitted, quoting from *Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1].) *Morris* points out the concept of "directory" versus "mandatory" with which we are concerned does not involve a distinction between permissive and obligatory, but rather denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates. (*Morris, supra,* 18 Cal.3d at p. 908.)

Among other citations, *Morris* cites *Garrison* v. *Rourke* (1948) 32 Cal.2d 430, 434-436 [196 P.2d 884],[7] as standing for the proposition a judicial decision is valid even though rendered after the statutorily prescribed period. In *Garrison*, the statute used only the mandatory language "shall" and did not prescribe a consequence for failure to timely comply. However, a case *Garrison* cites, *McQuillan* v. *Donahue* (1874) 49 Cal. 157, 158, reached the same result, holding the time limit merely directory, under a statute which did provide such a consequence, i.e., "unless the decision was filed within the prescribed time the action 'must' be tried again." (*Garrison, supra*, 32 Cal.2d at p. 436.) Thus, it is clear that where the statute prescribes such a consequence it is not always to be deemed to be mandatory and jurisdictional.

■ Just as in the *McQuillan* and *Garrison* cases, *supra*, we do not believe the legislative purpose in prescribing the time limits in section 3067 and Government Code section 11517 was to make those provisions mandatory and jurisdictional. Rather, we deem the probable legislative intent behind these time limits to have been the same as described in *Edwards, supra*, 25 Cal.3d at page 410, "to assure *to the aggrieved party* a reasonably timely hearing of, and decision on, his administrative appeal."[8] (Original italics.) *Edwards* observes that to hold the provision mandatory and jurisdictional would seemingly defeat this legislative purpose "by depriving the aggrieved party of his appeal through no fault of his own." (*Ibid.*) Moreover, the party in whose favor the rule was operating had not claimed any actual prejudice by reason of the delays involved in the case. (*Id.* at pp. 410-411.) *Edwards* held that, although the board it dealt with could have been mandated to comply with the time limit provisions, these provisions were "not to be deemed jurisdictional thereby depriving an aggrieved party of his right to appeal." (*Id.* at p. 412.)

A rationale similar to that expressed in *Edwards* concerning the benefits of timely decisionmaking supports the decisions in *Garrison, supra*, 32 Cal.2d 430, and *McQuillan, supra*, 49 Cal. 157, as well. Moreover, as we have seen, *McQuillan* dealt with a statute which set forth a consequence for noncompliance with the time limit. We believe this approach applies to the present case where the Protesting Parties would have a decision against them imposed through no fault of their own by means of a totally mechanical

---

[7]*Garrison, supra*, 32 Cal.2d 430, was overruled on another point in *Keane* v. *Smith* (1971) 4 Cal.3d 932, 939 [95 Cal.Rptr. 197, 485 P.2d 261].)

[8]*Edwards* dealt with a municipal ordinance reading: " 'On the filing of any appeal, the Board of Permit Appeals . . . shall fix the time and place of hearing, which shall be not less than five (5) nor more than fifteen (15) days after the filing of said appeal, and *shall act thereon not later than forty (40) days after such filing.*' " (25 Cal.3d at p. 409, italics added.)

The Board of Permit Appeals had complied with neither the 15-day nor the 40-day requirement. *Edwards* found these requirements were not mandatory and jurisdictional.

application of the time limit in the statute and of the cases stating the rule that if there is a consequence, then it is a mandatory and jurisdictional rule. As in *Edwards,* we conclude that to the extent the Board did not comply with the time limits of section 3067 and Government Code section 11517, there was no deprivation of its jurisdiction to hear and act on the protest. We apply the general rule that such time limitations are directory only.

Having reached this conclusion, we must acknowledge that we find inapposite *City of Coronado* v. *California Coastal Zone Conservation Com., supra,* 69 Cal.App.3d 570, on which the trial court relied. *Coronado* dealt with an entirely different statute, former section 27423 of the Public Resources Code[9] which this court construed as containing a "clear legislative direction of finality of decision" of the regional commission's decision if the state commission does not affirm, reverse, or modify the decision of the regional commission within 60 days. (69 Cal.App.3d at p. 577.) As is readily seen, the statute reads differently from section 3067, which cannot be viewed as such a "clear, unambiguous and explicit direction of finality." (69 Cal.App.3d at p. 577.)

Nor is the trial court's citation of *Woods* v. *Department of Motor Vehicles* (1989) 211 Cal.App.3d 1263 [259 Cal.Rptr. 885] of any assistance to the decision the court reached. *Woods* held there was merely a directory effect to section 16075, subdivision (b), providing the Department of Motor Vehicles " '*shall* conduct the hearing upon demand of the driver or owner, within 30 days of such demand, to determine the applicability of this [Financial Responsibility Law] chapter to such driver or owner.' . . ." (211 Cal.App.3d at p. 1266, original italics.) More than 30 days after the demand for a hearing was made, the department held the hearing in which it suspended Woods's driver's license. Woods asserted that there was a mandatory and jurisdictional effect to the statute with the result the department's license suspension was invalid. After reviewing the law on the subject, we concluded in *Woods,* as we do here, that the department's failure to conduct the hearing within the 30-day period did not invalidate the department's action, there a suspension, as the statute was not mandatory and jurisdictional. (*Id.* at p. 1272.)

On the question of whether the Board failed to "act" within the prescribed time limits involved here, we believe the trial court's reliance on *Klitgaard & Jones, Inc.* v. *San Diego Coast Regional Com., supra,* 48 Cal.App.3d 99, 110, was not appropriate. That case dealt with a statute setting out the

---

[9]Public Resources Code former section 27423, subdivision (b), read: "The commission may affirm, reverse, or modify the decision of the regional commission. If the commission fails to act within 60 days after notice of appeal has been filed, the regional commission's decision shall become final."

Section 27423 has been repealed and subdivision (a) is replaced by section 30625, subdivision (a), of the Public Resources Code. (See also Pub. Resources Code, §§ 30621 and 30622.)

specific conduct of the commission which it referred to immediately there-after as an "act." The statute there involved was Public Resources Code former section 27423, subdivision (b), quoted, *ante*, in footnote 9, at page 631.

Thus, the court in *Klitgaard & Jones* properly construed "act" to refer to "affirm, reverse, or modify" contained in the immediately preceding sentence of the subdivision.

Here, section 3067 contains provisions referring to the "decision," and the provision in question referring to the Board's failure to "act." After requiring that the "decision" be in writing, contain findings of fact and determine the issues presented, section 3067 specifies the "decision shall sustain, conditionally sustain, overrule, or conditionally overrule the protest." The section then specifies what purposes must be served in imposing any conditions. There follows the provision in question starting out with the phrase, "If the board fails to act . . . ." Thereafter, in the last two sentences, the section returns to the subject of the "decision," setting out provisions on how to give notice of the decision and when the decision becomes final.

When considering the statutory scheme as a whole, and particularly the provisions of section 3066 and Government Code section 11517, both dealing with the procedure to be followed in dealing with these protests, it is reasonable to construe section 3067's distinctive reference to "act" within 30 days after the Board receives a proposed decision where the case is heard before a hearing officer alone, as beginning the initial processing of the case within the 30-day time limit, rather than actually rendering one of the decisions the section specifies within that time.

In this connection, Government Code section 11517, subdivision (d), expressly excepts from its rule the proposed decision is deemed adopted 100 days after delivery those situations in which, within the 100-day period, "the agency commences proceedings to decide the case upon the record . . . or the agency refers the case to the administrative law judge to take additional evidence." Here, the Board commenced proceedings within 30 days of its receipt of the ALJ's proposed decision, well within the 100-day period, and it ordered additional evidence taken by the ALJ. Under the second sentence of section 11517, subdivision (d), on this record it is an appropriate conclusion the Board issued its decision within 100 days of submission of the case. Although the Board did not declare the case was submitted, the record shows that after the Board received the ALJ's supplemental findings and conducted the additional hearing on July 11, 1990, the matter was submitted as of the latter date. Its decision on July 20, 1990, less than 10 days later and within 30 days of receipt of the supplemental findings of the ALJ can only be viewed as timely compliance with Government Code section 11517. In light

of the clear applicability of the express exception for the taking of additional evidence, there was no reasonable basis for the trial court to apply the third sentence of subdivision (d), relating to starting the 100-day period on delivery of the transcript, to the *initial* delivery of the transcript in August 1989 even before the ALJ's proposed decision was received. (Compare with *Outdoor Resorts etc. Owners' Assn.* v. *Alcoholic Beverage Control Appeals Bd.* (1990) 224 Cal.App.3d 696, 703-704 [273 Cal.Rptr. 748], where the agency making the decision after rejecting the ALJ's proposed decision actually decides the matter within 100 days of delivery of the transcript of the proceedings before the ALJ, the agency's decision is timely under Government Code section 11517, subdivision (d). Moreover, subdivision (b) of Government Code section 11517 is merely directory. Thus, a rejection of the ALJ's proposed decision beyond 30 days after the proposed decision is received by the agency is effective.)

Where, as here, by reviewing, discussing, and (according to the Board) rejecting the proposed decision, hearing statements from counsel and setting the matter for further hearing, the Board promptly begins processing the matter within the 30-day limit, it is appropriate under section 3067 to consider that the Board did "act" in a timely fashion. Otherwise, the case was processed in a relatively continuous fashion with the Board making its decision within 30 days of receipt of the supplemental factual findings of the ALJ. We are of the view the proper conclusion on these facts is that the Board did "act" within the prescribed time. Thus, the "deemed approved" provision was not correctly applied in the first instance.

While the reporter's transcript of the hearing on the petition for a writ of mandate contains an indication the trial court examined the record and found there was substantial evidence supporting the Board's decision, under the circumstances of this case, it is not appropriate to consider the court's oral expressions as a formal determination of the evidentiary question under the petition. Accordingly, we remand for such a formal determination.

### Disposition

The judgment is reversed. The trial court is directed to vacate its order granting the writ of mandate and to conduct further proceedings in administrative mandamus, including making a determination whether substantial evidence supports the Board's decision. The Protesting Parties and the Board are awarded their costs on appeal.

Kremer, P. J., and Huffman, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 15, 1993.