[No. D008020. Fourth Dist., Div. One. June 28, 1989.]

LORNE ATHERTON WOODS, Plaintiff and Appellant, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

**COUNSEL**

Jan Buddingh, Jr., for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Melvin R. Segal and Jay M. Bloom, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**BENKE, J.**—Respondent California Department of Motor Vehicles (Department) suspended the driver's license of appellant Lorne Atherton Woods pursuant to Vehicle Code[1] section 16070 for failure to establish proof of financial responsibility. Woods appeals from a judgment denying a writ of mandate to set aside the suspension. We affirm.

### FACTS

On January 9, 1987, Woods was involved in a motorcycle/automobile accident. The Department notified Woods on February 9, 1987, that his driver's license would be suspended pursuant to section 16070 for failing to prove financial responsibility.[2] The notice stated that if Woods requested a hearing before February 24, 1987, the suspension would be stayed until further notice.

On February 20, 1987, Woods requested a formal hearing. Although section 16075, subdivision (b), provides for a hearing within 30 days of a driver's demand, Woods's hearing was not held until May 14, 1987. On June 15, 1987, the Department issued an order of suspension for one year pursuant to section 16070. The order allowed Woods to obtain a restricted privilege permitting him to drive to and from work if he filed proof of financial responsibility and paid a $250 penalty fee.

Woods petitioned the superior court for a peremptory writ of mandate to compel the Department to set aside the suspension. He claimed the hearing was not held within 30 days of his request as required by section 16075, subdivision (b), and further, that the hearing officer's ruling was not supported by the weight of the evidence. The superior court denied the writ. This appeal followed.

---

[1] All statutory references are to the Vehicle Code unless otherwise specified.

[2] The notice also stated that Woods failed to report the accident pursuant to section 16004, subdivision (a). Woods cured this defect by filing an accident report and the proceedings we review are not based upon any violation of section 16004, subdivision (a).

## ISSUE ON APPEAL

■■■ The sole issue raised by Woods on this appeal is whether the Department's failure to comply with the time requirements of section 16075, subdivision (b), invalidates his suspension. We conclude it does not.

## DISCUSSION

California's Financial Responsibility Law is codified in section 16000 et seq. Article 2 of the Financial Responsibility Law requires drivers of motor vehicles to be self-insured, to have insurance or to be otherwise financially responsible for damages caused by accidents. Under section 16070, subdivision (b), whenever the Department receives an accident report which alleges that any of the drivers involved in the accident were not properly insured, the Department must mail a notice of intent to suspend the driver's license. The suspension notice must inform the driver of his right to a hearing under section 16075. (*Ibid.*)

Section 16075, subdivision (b), states: "The department *shall* conduct the hearing upon demand of the driver or owner, within 30 days of such demand, to determine the applicability of this chapter to such driver or owner. . . ." (Italics added.) Woods argues the word "shall" renders section 16075, subdivision (b), mandatory and that his suspension must be set aside because the hearing was not held within 30 days.

While Woods is correct in concluding the word "shall" connotes administrative action is required, it does not necessarily follow that the result of a failure to act within the legislatively prescribed time period is nullification of the action or loss of jurisdiction.

The problem posed by Woods's appeal is discussed at some length by the Supreme Court in *People* v. *McGee* (1977) 19 Cal.3d 948, 958-959 [140 Cal.Rptr. 657, 568 P.2d 382], where the court observes: "Although the parties to this action have utilized the mandatory-directory terminology in their briefs, both parties, sharing the confusion exhibited in some past judicial decisions, have improperly equated the mandatory-directory duality with the linguistically similar, but analytically distinct, 'mandatory-permissive' dichotomy. As we explained recently in *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 908 [136 Cal.Rptr. 251, 559 P.2d 606], in the latter context 'the term "mandatory" refers to an obligatory [procedure] which a governmental entity is required to [follow] as opposed to a permissive [procedure] which a governmental entity may [follow] or not as it chooses. By contrast, the "directory" or "mandatory" designation does not refer to whether a particular statutory requirement is "permissive" or "obligatory,"

but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates. [Citations.]'
. . . .

"Although the mandatory-directory and obligatory-permissive dichotomies are thus analytically distinct, in some instances there is an obvious relationship between the two. If, for example, a statute simply embodies a permissive procedure with which a governmental entity may or may not comply as it chooses, the entity's failure to comply will generally not invalidate the entity's subsequent action. The converse of this proposition is not always true, however, for as we observed in *Morris,* '[m]any statutory provisions which are "mandatory" in the obligatory sense are accorded only "directory" effect.' [Citation.]"

Significantly our Supreme Court has held that "generally, requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed. (See, e.g., *Garrison* v. *Rourke* (1948) 32 Cal.2d 430, 435-436 [196 P.2d 884]; *Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1]; *Francis* v. *Superior Court* (1935) 3 Cal.2d 19, 27 [43 P.2d 300]; see also *Radovich* v. *Agricultural Labor Relations Bd.* (1977) 72 Cal.App.3d 36, 47 [140 Cal.Rptr. 24]; *Anderson* v. *Pittenger* (1961) 197 Cal.App.2d 188, 194 [17 Cal.Rptr. 54]; cf. *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 931 [120 Cal.Rptr. 707, 534 P.2d 403].) In ascertaining probable intent, California courts have expressed a variety of tests. In some cases focus has been directed at the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment. (*Morris, supra,* at pp. 909-910; *Pulcifer, supra,* at p. 262; *Francis, supra,* at pp. 28-29.) Other cases have suggested that a time limitation is deemed merely directory 'unless a consequence or penalty is provided for failure to do the act within the time commanded.' (*Garrison, supra,* at pp. 435-436; see *McDonald's Systems of California, Inc.* v. *Board of Permit Appeals* (1975) 44 Cal.App.3d 525, 544-545, fn. 15 [119 Cal.Rptr. 26], and cases cited.)" (*Edwards* v. *Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365].) In this case application of either test yields the same result. ■ First, we are reminded that " ' "[i]n order to determine whether a particular statutory provision . . . is mandatory or directory, the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent. In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the

required time. [Citation.] *When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose* [citation]. . . ." ' (Italics added.) (*Morris* v. *County of Marin, supra,* 18 Cal.3d 901, 909-910.)" (*People v. McGee, supra,* 19 Cal.3d at p. 962, citing *Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1].) The likely consequences of holding mandatory the time period for the hearing involved here are wholly inconsistent with the Legislature's intent in passage of the financial responsibility laws.

As has been observed, when the Department receives a report which alleges a driver was involved in an accident and did not have proof of financial responsibility it is required under section 16070 to send the driver notice of intent to suspend his license. Prior to 1985 section 16075 required the Department provide a driver 20 days' notice of its intent to suspend his license. The driver in turn was given 20 days from receipt of the notice to request a hearing. If requested, the Department was required to conduct the hearing within 60 days. (Stats. 1974, ch. 1409, § 8, p. 3101.) No time limit was set for determination by the Department. (*Ibid.*) In 1984 the Legislature amended section 16075 effective July 1, 1985. (Stats. 1984, ch. 1324, § 11, p. 4558.) The 1984 amendment substantially abbreviated each of the time limits set forth in section 16075. (*Ibid.*) Currently, the Department is required to give only 15 days' notice of its intent to suspend and the driver is given only 10 days in which to request a hearing. (§ 16075, subds. (a), (c).) The Department is also required to conduct any hearing within 30 days (§ 16075, subd. (b)) and render a decision within 15 days after conclusion of the hearing (§ 16075, subd. (e)). During this time the driver may freely use his vehicle.

The recent history of the Financial Responsibility Law convinces us that in shortening the time periods guiding the administrative hearing process, the Legislature's consistent goal has been to remedy what it perceives has been a lack of enforcement by the Department and thereby benefit the public by speedily removing the financially irresponsible driver from the road.

In 1983 the Legislature addressed the problem of the uninsured motorist by requiring, regardless of fault, that any recovery an uninsured motorist wins against an insured motorist be reduced by the amount paid in uninsured motorist coverage. (§ 17200). According to the Senate Finance and Insurance Committee Report on section 17200, this draconian measure was designed to reduce the cost of uninsured motorist coverage and "*to address the lack of enforcement by state agencies against uninsured motorists.*"

(Sen. Finance and Insurance Com. Rep. on Sen. Bill No. 808 (1983-1984 Reg.Sess.) as amended May 27, 1983, p. 3, italics added.)[3]

In 1984 the Legislature enacted the Robbins-McAlister Financial Responsibility Act (Robbins-McAlister). (1984 Stats., ch. 1322, § 1.) The substance of Robbins-McAlister was the addition of section 16028, which requires drivers produce proof of financial responsibility if they are stopped for a moving violation. Failure to produce proper proof is an infraction which can be cured by demonstrating that at the time the driver was stopped he or she in fact had insurance. (§ 16028, subd. (d).) If the violation cannot be cured and the driver is convicted of violating section 16028, the driver must, for the next three years, file with the Department proof of financial responsibility. (§ 16034, subd. (a).) If the driver does not produce such proof for the Department, the Department must suspend the driver's license. (§ 16034, subd. (d).)

█ Plainly, Robbins-McAlister was yet another attempt by the Legislature to detect financially irresponsible drivers and either compel them to obtain insurance or remove them from the road. As initially proposed Robbins-McAlister also would have required the Department to refuse to renew the registration of vehicles registered to drivers who are not financially responsible. Instead of enacting the cross-matching requirement, the Legislature directed the Department to determine what impact such a law would have on the volume of uninsured drivers. (1984 Stats., ch. 1324, § 12, pp. 4558-4559.) The Legislature appropriated $56,210 to finance the Department's study. (1984 Stats., ch. 1324, § 16, p. 4559.)

At the same time, the Legislature appropriated another $335,080 "To automate the Financial Responsibility Section and to implement the provisions of [Robbins-McAlister]." (1984 Stats., ch. 1324, § 16.) In providing the automation funding the Legislature stated: "It is the intent of the Legislature to provide for immediate automation of the Financial Responsibility Section . . . *to reduce the number of uninsured motorists on the highways.*" (*Ibid.,* italics added.)

The new time requirements for section 16075 were enacted at the same time as Robbins-McAlister. (Robbins-McAlister, 1984 Stats. ch. 1322, and the changes in § 16075, ch. 1324, were both enacted on Sept. 25, 1984.) Indeed the act which changed the time requirements, chapter 1324, was the same act which provided the appropriations to study cross-matching vehicle registration and automation of the Financial Responsibility Section.

---

[3] Section 17200 was found unconstitutional by the court in *Bennett* v. *Bodily, ante,* page 133 [259 Cal.Rptr. 199].

 Aside from the observation that legislative intent is not served by making mandatory the time period for a hearing prescribed in section 16075, subdivision (b), we note as well that the statute imposes no penalty on the Department for failure to meet the statute's time requirements, lending yet further weight to the nonmandatory nature of the 30-day time period. (See *Edwards* v. *Steele, supra,* 25 Cal.3d at p. 410.)

To summarize, in 1983 a committee of the Legislature found the Department was not enforcing the law against uninsured drivers. In 1984 the Legislature enacted a new detection scheme—Robbins-McAlister, ordered the Department to study an alternative detection and enforcement scheme—vehicle/driver cross-matching and appropriated a large amount of money to automate the Department's enforcement capability. Having gone to all this trouble to assure the Department reduces the number of uninsured motorists, we cannot accept Woods's argument that it intended to forego enforcement and therefore deprive the Department of jurisdiction whenever it fails to act within the prescribed time period. Nothing in the statutory scheme or legislative history supports such a conclusion and in the absence of such legislative support we must assume the time period set for hearing is directory only. *(Edwards* v. *Steele, supra,* 25 Cal.3d at p. 410.)

While certainly the shortening of such time periods might in some sense benefit the subject driver by setting a time certain within which he will be left to ponder his fate, in light of the expressed legislative intent and the driver's ability to continue driving during the period of the stay, we conclude the goal of the 1984 amendments was to remove the uninsured motorist from the road and thereby encourage drivers to remain financially responsible.

To accept Woods's argument giving the time limit set forth in section 16075, subdivision (b), mandatory rather than directory effect would allow drivers who are not financially responsible to escape the suspension otherwise required by section 16070. Such an interpretation is clearly inconsistent with the purpose of the time limits set forth in the 1984 amendment. Plainly the goal of promptly suspending financially irresponsible drivers would not be served by allowing them to avoid suspension altogether. Moreover, it would result in permitting such drivers to traverse the streets until such time as another accident occurs. While such a process might eventually result in securing suspension of such a driver, it would be of little comfort to the individuals at whose personal and financial expense this driver will be removed from the road. This is not the intent of the 1984 amendment.

We note as well that to accept appellant's argument that the Department has lost jurisdiction to act when it has failed to conduct the hearing within

the prescribed time period, would present considerable due process problems for those drivers wishing to have the Department conduct its hearing. As was pointed out in *Edwards* v. *Steele, supra,* 25 Cal.3d 406, 411, it is for this reason: "Several appellate cases have recognized that it would be improper, or even unconstitutional, to hold that an administrative board's failure to act within the period prescribed by statute or ordinance divests a board of its jurisdiction to rule upon a timely appeal. (See *Ursino* v. *Superior Court* (1974) 39 Cal.App.3d 611, 620-622 [114 Cal.Rptr. 404] [denial of due process]; *Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1964) 231 Cal.App.2d 501, 509-510 [42 Cal.Rptr. 58] [a 'monstrous' result]; *Peak* v. *Industrial Acc. Com.* (1947) 82 Cal.App.2d 926, 932 [187 P.2d 905] [an 'absurd' result]; *Radovich* v. *Agricultural Labor Relations Bd., supra,* 72 Cal.App.3d at p. 47.)"

However, even if we were to accept Woods's argument that the Legislature intended the changes in the financial responsibility laws to benefit the uninsured motorist facing a suspension hearing, and therefore failure to conduct a hearing within 30 days could invalidate the Department's determination, we would nonetheless require that in seeking direct review of his suspension he show he was prejudiced by any delay. (See *Edwards* v. *Steele, supra,* 25 Cal.3d at pp. 410-411.) ■ We note our courts have consistently held Penal Code section 1382, which by its terms requires dismissal of criminal charges which are not brought to trial in a timely manner, will not invalidate a conviction unless in addition to a delayed trial the defendant can demonstrate prejudice. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 574 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *People* v. *Wilson* (1963) 60 Cal.2d 139, 151-152 [32 Cal.Rptr. 44, 383 P.2d 452].) While the right to drive is certainly important (see *Rios* v. *Cozens* (1972) 7 Cal.3d 792 [103 Cal.Rptr. 299, 499 P.2d 979]), we cannot believe it is entitled to greater protection than the law affords criminal defendants facing imprisonment. ■ Because Woods failed both below and in this court to demonstrate he was prejudiced in any way by the delay, he would not be entitled under any interpretation of section 16705, subdivision (b), to relief from his suspension.

In light of our conclusions we must respectfully disagree with the holding in *Austin* v. *Department of Motor Vehicles* (1988) 203 Cal.App.3d 305, 309 [249 Cal.Rptr. 618], upon which Woods relies. In *Austin* the court, without discussing *McGee,* fell into the precise analytical trap described in *McGee.* The *Austin* court held that because a related provision of section 16075 was not permissive, the Department's failure to comply with it invalidated a license suspension. "The DMV's argument that a minor delay in delivering the order sufficiently complies with the statute cannot be squared with the statutory language, which is mandatory, not directory. 'The department

*shall* render its decision within 15 days after conclusion of the hearing.' (Veh. Code, § 16075, subd. (e), italics added.) As was so precisely put by the trial judge, ' "shall" means "shall." ' 'The word "shall" is ordinarily "used in laws, regulations, or directives to express what is mandatory." [Citations.] "May," on the other hand, is usually permissive. The Legislature is very aware of this distinction . . . .' [Citation.] The words of this statute clearly mandate that the DMV render it[s] decision within 15 days." (*Austin, supra,* 203 Cal.App.3d at p. 309.) Contrary to the requirements of *McGee,* the court in *Austin* did not engage in a separate inquiry to determine whether the obligatory terms of the statute should nonetheless be given "directory" effect.

For much the same reason, we cannot rely entirely upon the language of section 15, which provides that as used in the Vehicle Code " 'shall' is mandatory and 'may' is permissive." While these definitions establish the time requirements of section 16075 are not permissive, they do not assist us in determining what effect we must accord a violation of the statute's terms.

We conclude the failure of the Department to conduct a hearing pursuant to section 16075, subdivision (b), within 30 days will not invalidate a suspension imposed pursuant to section 16070.3. We leave to a case-by-case examination whether a given failure to comply with section 16075, subdivision (b), has resulted in prejudice sufficient that the Department's action will be held invalid.

The judgment is affirmed.

Wiener, Acting P. J., and Nares, J., concurred.