[No. C021327. Third Dist. Jan. 10, 1997.]

STEVEN COX et al., Plaintiffs and Respondents, v.
CALIFORNIA HIGHWAY PATROL, Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, Martin Milas, Assistant Attorney General, Marybelle D. Archibald and Jill Buttram, Deputy Attorneys General, for Defendant and Appellant.

Jacqueline S. Parkinson for Plaintiffs and Respondents.

## OPINION

DAVIS, Acting P. J.—The California Highway Patrol (the CHP) seized two Harley-Davidson motorcycles from Steven Cox that appeared to have altered vehicle identification numbers (VIN's). Pursuant to Vehicle Code section 10751, subdivision (b), the CHP notified Cox of a hearing to determine ownership. Then the CHP discovered the motorcycles were stolen, returned them to the insurers who had paid on the theft claims, and canceled the hearing.[1]

Cox, along with Nevin Brown and William Hopkins, the two men for whom Cox was allegedly building the motorcycles, filed a petition for writ

---

[1]Vehicle Code section 10751 provides in relevant part:

"(a) No person shall knowingly buy, sell, offer for sale, receive, or have in his or her possession, any vehicle, or component part thereof, from which any serial or identification number, including, but not limited to, any number used for registration purposes, that is affixed by the manufacturer to the vehicle or component part, in whatever manner deemed proper by the manufacturer, has been removed, defaced, altered, or destroyed, unless the vehicle or component part has attached thereto an identification number assigned or approved by the department in lieu of the manufacturer's number.

"(b) Whenever a vehicle described in subdivision (a), including a vehicle assembled with any component part which is in violation of subdivision (a), comes into the custody of a peace officer, it shall be destroyed, sold, or otherwise disposed of under the conditions as provided in an order by the court having jurisdiction. *No court order providing for disposition shall be issued unless the person from whom the property was seized, and all claimants to the property whose interest or title is on registration records in the Department of Motor Vehicles, are provided a postseizure hearing by the court having jurisdiction within 90 days after the seizure.* This subdivision shall not apply with respect to a seized vehicle or component part used as evidence in any criminal action or proceeding. Nothing in this section shall, however, preclude the return of a seized vehicle or a component part to the owner by the seizing agency following presentation of satisfactory evidence of ownership . . . ."

"• • • • • • • • • • • • • • • • • • • • • • • •

of mandate against the CHP. Citing section 10751, the three petitioners argued they were entitled to a return of the motorcycles because the forfeiture proceedings ended when no hearing was held within 90 days after the seizure. The trial court essentially agreed and ordered the CHP to pay the petitioners $18,503, the value of the two motorcycles (the motorcycles were no longer available for return as the insurers had sold them to third parties).

On appeal the CHP argues: (1) the 90-day requirement of section 10751 is directory, not mandatory and jurisdictional; and (2) petitioners will not be prejudiced by a hearing held now (after disposal of the motorcycles). We conclude that the 90-day requirement is directory and that the trial court erroneously placed the burden on the CHP to show that petitioners would not be prejudiced by a belated hearing; the burden rested with petitioners to show they would be prejudiced. Consequently, we reverse and remand for a hearing.

## BACKGROUND

On April 12, 1994, Sacramento Probation Officers Jess Davis and Fred Mitsch searched Cox's home. The officers found two Harley-Davidson motorcycles that appeared to have their VIN's ground off and restamped. The CHP seized the motorcycles.

Cox spoke with Officer Mitsch on April 14. Cox explained he "was building the motorcycles from scratch for some other people."

The CHP notified Cox on April 14, 1994, that a hearing would be held in Sacramento Municipal Court on June 7 to determine ownership of one of the motorcycles—a 1988 Harley-Davidson with the 17-digit VIN ground off and restamped with #SM4998. The record contains no notice of hearing regarding the second motorcycle, a 1993 model.

---

"(d) Whenever a peace officer seizes a vehicle described in subdivision (a), the person from whom the property was seized shall be provided a notice of impoundment of the vehicle which shall serve as a receipt and contain the following information:

". . . . . . . . . . . . . . . . . . . . . .

"(2) A statement that the vehicle seized has been impounded for investigation of a violation of Section 10751 of the California Vehicle Code and that the property will be released upon a determination that the serial or identification number has not been removed, defaced, altered, or destroyed, or upon the presentation of satisfactory evidence of ownership of the vehicle or a component part, if no other person claims an interest in the property; otherwise, a hearing regarding the disposition of the vehicle shall take place in the proper court.

". . . . . . . . . . . . . . . . . . . . . .

"(e) A hearing on the disposition of the property shall be held by the municipal or justice court within 90 days after the seizure. The hearing shall be before the court without a jury." (Italics added.)

All undesignated statutory references are to the Vehicle Code unless otherwise specified.

Through confidential processes, the CHP ascertained that both motorcycles were stolen. The 1993 Harley-Davidson was registered to State Farm Insurance; the 1988 Harley-Davidson was registered to Midcentury Insurance. The CHP returned the motorcycles to the insurance companies and notified Cox on April 26, 1994, that it had canceled the June 7 hearing. The two insurers eventually sold the motorcycles to private individuals residing in California.

Cox, Brown and Hopkins appeared at the Sacramento Municipal Court on June 7. The court explained the matter had been dismissed. Cox told the court he did not want the case dismissed "because they had taken two motorcycles, not just one, and [he] had receipts for all the parts."

Cox, Brown and Hopkins then filed their petition for writ of mandate. They wanted the seized motorcycles returned to them, or monetary damages if the motorcycles were unavailable. They argued they were entitled to a hearing prior to disposal of the vehicles, and the CHP's failure to provide a hearing within 90 days after seizure "terminated its rights to utilize the forfeiture procedures under Vehicle Code section 10751."

The CHP has maintained throughout these proceedings that petitioners are entitled to a hearing in the municipal court, and maintains that an adequate hearing can be held at this time.[2]

---

[2]Subdivision (b) of section 10751 states that: ". . . No court order providing for disposition shall be issued unless the person from whom the property was seized, and all claimants to the property whose interest or title is on registration records in the Department of Motor Vehicles, are provided a postseizure hearing by the court having jurisdiction within 90 days after the seizure. . . . *Nothing in this section shall, however, preclude the return of a seized vehicle or a component part to the owner by the seizing agency following presentation of satisfactory evidence of ownership . . . .*" (Italics added.)

Subdivision (d)(2) of section 10751 provides: "Whenever a peace officer seizes a vehicle [with an altered number], the person from whom the property was seized shall be provided a notice of impoundment of the vehicle which shall . . . contain the following information: [¶] . . . [¶] (2) A statement that the vehicle seized has been impounded for investigation of violation of Section 10751 of the California Vehicle Code and that the property will be released upon a determination that the serial or identification number has not been removed, defaced, altered, or destroyed, or upon the presentation of satisfactory evidence of ownership of the vehicle or a component part, *if no other person claims an interest in the property; otherwise, a hearing regarding the disposition of the vehicle shall take place in the proper court.*" (Italics added.)

In a supplemental brief, the Attorney General notes that these subdivisions, "read together, and in light of the purpose of [section 10751] to give due process to multiple claimants of seized vehicles, must mean that a hearing need not be conducted when two conditions are met. Those two condition[s] are: (1) there is only one [potential] claimant and (2) that claimant presents satisfactory evidence of ownership of the vehicle." This construction appears sound. A hearing also is not required if it is determined that the serial or identification number has not been removed, defaced, altered, or destroyed and only one claimant with that

The trial court found the 90-day requirement of section 10751, subdivision (b), (hereafter, section 10751(b)), to be mandatory and jurisdictional. The trial court further determined that a belated hearing in this case, if one could be held, would neither satisfy due process nor constitute an adequate remedy: "[T]he [CHP] has disposed of the motorcycles, which now are in the possession of third parties. The Court invited [the CHP] to show how, if a hearing were now held after disposal, either the motorcycles themselves or satisfactory evidence of their condition at the time of seizure could be presented. It is not clear from [the CHP's] submission that this could be done. [The CHP] now assigns the burden of producing the motorcycles to petitioners. But it is not clear that the motorcycles are subject to subpoena, or in the same condition as at the time of seizure. There is no showing that photographs taken by [the CHP] after the seizure adequately depict all of the material portions of the motorcycles and related parts. For these reasons, the Court finds that petitioners would be prejudiced by a belated hearing and would decline to order a hearing after disposal of the motorcycles even if such a hearing was not barred by the 90-day limit."

The trial court had directed the parties to present evidence on the value of the unavailable motorcycles. Using this evidence, the trial court entered a judgment granting a peremptory writ of mandate that directed the CHP to pay petitioners $18,503 (the trial court noted that a mandamus action may result in a monetary award if the particular property sought to be returned cannot be returned).

At the time the trial court ruled on the petition for writ of mandate, it did not appear there were any criminal proceedings involving petitioners and their possession of the motorcycles or component parts.

## DISCUSSION

### 1. *The 90-day Hearing Requirement Is Directory*

■ The principal question in this appeal is whether the failure to provide a hearing within 90 days of the motorcycles' seizure deprived the court of jurisdiction to dispose of the vehicles under section 10751. The answer to this question turns on whether this 90-day time requirement is considered mandatory or directory.

■ A noted treatise on statutory construction states: "The classification of statutes as mandatory or directory is important in helping to determine

number is involved. (§ 10751, subd. (d)(2); see also *Hughes* v. *Neth* (1978) 80 Cal.App.3d 952 [146 Cal.Rptr. 37] [concluding that former section 10751, subdivision. (b), which did not require any notice and hearing prior to disposition, violated due process].)

what effect should be given to statutory directions. . . . No statutory provisions are intended by the legislature to be disregarded; but where the consequences of not obeying them in every particular are not prescribed, the courts must judicially determine them. In doing so they must consider the importance of the literal observance of the provision in question to the object of the legislation. If the provision is essential it is mandatory. . . . It has been held that to distinguish between mandatory and directory language, the court may look to the purposes of the statute and the equities inherent in the construction chosen." (3 Sutherland, Statutory Construction (5th ed. 1992) § 57.01, p. 2, fn. omitted.) ■■■ At the outset, though, it must be noted that "generally, requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed." (*Edwards* v. *Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365] (*Edwards*); see, e.g., *Garrison* v. *Rourke* (1948) 32 Cal.2d 430, 435-436 [196 P.2d 884].)

■■■ The Legislature has not clearly expressed whether the 90-day time requirement in section 10751(b) is mandatory or directory. Therefore, we must interpret the statute and determine the legislative intent. (*Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1].) ■■■ Courts have set forth a variety of factors to determine whether the Legislature intended a time requirement to have directory or mandatory effect. (*Edwards, supra,* 25 Cal.3d at p. 410; *Woods* v. *Department of Motor Vehicles* (1989) 211 Cal.App.3d 1263, 1267 [259 Cal.Rptr. 885] (*Woods*).) Three factors are critical here.

First, courts have noted that " ' " 'the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. . . . *When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose . . . .' " ' " (Woods, supra,* 211 Cal.App.3d at pp. 1267-1268, quoting *Pulcifer* v. *County of Alameda, supra,* 29 Cal.2d at p. 262, italics added in *Woods,* citations omitted; *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 909-910 [136 Cal.Rptr. 251, 559 P.2d 606].)

Second, in a related vein, courts have looked "to the [statutory] procedure's purpose or function. If the procedure is essential to promote the statutory design, it is 'mandatory' and noncompliance has an invalidating effect. If not, it is directory. . . ." (*Cal-Air Conditioning, Inc.* v. *Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 673 [26 Cal.Rptr.2d 703], citations omitted (*Cal-Air*); *People* v. *McGee* (1977) 19 Cal.3d 948, 958-959 [140 Cal.Rptr. 657, 568 P.2d 382].)

Finally, cases have suggested that a statutory time limitation is considered directory " ' "unless a consequence or penalty is provided for failure to do the act within the time commanded." ' " (*Woods, supra,* 211 Cal.App.3d at p. 1267, quoting *Garrison* v. *Rourke, supra,* 32 Cal.2d at pp. 435-436.)

A look at some decisions that have applied these principles is enlightening.

In *Woods,* the court applied these principles in analyzing section 16075, subdivision (b). That section requires the Department of Motor Vehicles (DMV) to hold a hearing to establish a driver's financial responsibility within 30 days of the driver's request. The driver's hearing in *Woods* was held more than 30 days after the request; the driver sought a writ of mandate to compel DMV to set aside its suspension of his driver's license. (211 Cal.App.3d at p. 1265.) The court concluded that if it construed the 30-day time requirement as mandatory, that would be "wholly inconsistent with the Legislature's intent in pass[ing] the financial responsibility laws." (*Id.* at p. 1268.) A 1984 amendment to section 16075 had shortened the time period for hearings in an effort to quickly remove uninsured motorists from the road and encourage drivers to remain financially responsible. (211 Cal.App.3d at pp. 1268-1270.) "Plainly the goal of promptly suspending financially irresponsible drivers would not be served by allowing them to avoid suspension altogether." (*Id.* at p. 1270.) In addition, the statute imposed no penalty for failure to meet the time requirements. (*Ibid.*)

A similar analysis was employed in *People* v. *Property Listed in Exhibit One* (1991) 227 Cal.App.3d 1 [277 Cal.Rptr. 672] (*Exhibit One*). There the court concluded that the 30-day limitation for filing petitions of forfeiture under Health and Safety Code section 11488.4, subdivision (j), was directory, not mandatory. The court observed that "[b]oth the government and the claimant have an interest in a rule that allows the government some time to investigate the situation to determine whether the facts entitle the government to forfeiture so that, if not, the government can return the property without formal proceedings. . . . [¶] Moreover, to construe the 30-day limitation as a mandatory statute of limitations would defeat the legislative intent of the forfeiture statutes which is to strip drug dealers of the tools and profits of their illicit trade. . . ." (227 Cal.App.3d at p. 10, citation omitted.)

In contrast to *Woods* and *Exhibit One* stands *Pulcifer* v. *County of Alameda, supra,* 29 Cal.2d 258. In *Pulcifer,* the court concluded that a time requirement in a county charter was mandatory. That requirement stated: " 'The compensation of elective officers shall be fixed at least six months

prior to the election of such officer.' " (*Id.* at p. 262.) The court in *Pulcifer* noted that the apparent purpose of this time provision was both to prevent persons in office from using the power of their positions to increase their salaries after the election, and to prevent a candidate from using his prospective power upon the legislative body to have it enact a salary increase effective after the election. (*Id.* at p. 263.) The court found that to construe the time provision as directory would defeat this apparent purpose and render the provision meaningless, but to construe it as mandatory would give effect to that purpose. (*Id.* at pp. 262-263.)

 The 90-day requirement of section 10751(b) is more akin to the directory time provisions in *Woods* and *Exhibit One* than it is to the mandatory provision in *Pulcifer*. As we explain, this 90-day provision is not "essential to promote the statutory design." (*Cal-Air, supra,* 21 Cal.App.4th at p. 673.)

As originally drafted, section 10751 did not require a noticed hearing—the seizing agency could simply dispose of the vehicle or component part after completing its investigation. (See *Hughes* v. *Neth, supra,* 80 Cal.App.3d at p. 959.) The court in *Hughes* concluded that this version of section 10751 violated due process. (80 Cal.App.3d at p. 960.) The Legislature enacted urgency legislation in 1979 to provide for notice and hearing under section 10751(b), thereby correcting the constitutional defect. (Stats. 1979, ch. 328, §§ 1, 3, pp. 1181, 1183.)

The purpose of section 10751(b), therefore, is to ascertain the true owner of a vehicle with altered numbers by allowing law enforcement to investigate, and claimants to establish, that ownership; if ownership cannot be determined, section 10751(b) provides for an orderly disposition. Section 10751(b) works to assure that before the seizing agency disposes of the property, those claiming an interest in the property receive notice and an opportunity to be heard. The statute contemplates that multiple claimants may often be involved: the person from whom the property was seized and all persons listed on the DMV registration records. To hold the 90-day period jurisdictional would defeat this purpose by foreclosing law enforcement from investigating any further, and by foreclosing a belated claimant from proving satisfactory evidence of ownership. Moreover, lacking jurisdiction, a court would have no power to return the vehicles to anyone; they would remain in the custody of the seizing agency. Administrative headaches would quickly ensue for that agency. Construing the 90-day period as directory helps to ensure that the true owner is identified and that an orderly disposition takes place.

Furthermore, section 10751 does not set forth any penalty or consequence for the failure to provide a hearing within 90 days.

Finally, section 10751(b)'s 90-day requirement does "not apply with respect to a seized vehicle or component part used as evidence in any criminal action or proceeding." (§ 10751(b).) The statute, therefore, contemplates a circumstance where an ownership hearing might not be held until well after 90 days. From this exception it can be inferred that a meaningful hearing can still be held at such a juncture.

We conclude that the 90-day requirement in section 10751(b) is directory.

### 2. *The Belated Hearing*

The trial court found that, even if a section 10751(b) hearing could be held after 90 days, the petitioners would be prejudiced by such a hearing because the delay created proof problems for them.

Before making this finding, the trial court had "invited [the CHP] to show how, if a hearing were now held after disposal, either the motorcycles themselves or satisfactory evidence of their condition at the time of seizure could be presented." The trial court concluded: "It is not clear from [the CHP's] submission that this could be done."

The problem is that it was not the CHP's burden to show that petitioners would not be prejudiced by a belated hearing. It was the petitioners' burden to show they would be prejudiced. (See *Woods, supra,* 211 Cal.App.3d at p. 1271; *Edwards, supra,* 25 Cal.3d at pp. 410-411; *Exhibit One, supra,* 227 Cal.App.3d at p. 5.)

In its supplemental brief, the CHP asks us to take judicial notice of Cox's no contest plea to the charge of violating section 10803, subdivision (b). We do take such judicial notice. (Evid. Code, § 452, subd. (d).) This plea arose out of the incident at issue. Section 10803, subdivision (b), provides: "Any person who possesses, for the purpose of sale, transfer, import, or export, more than one motor vehicle or parts from more than one motor vehicle, with the knowledge that the vehicle identification numbers of the motor vehicles or motor vehicle parts have been altered, counterfeited, defaced, destroyed, disguised, falsified, forged, obliterated, or removed for the purpose of misrepresenting the identity or preventing the identification of the motor vehicles or motor vehicle parts, is guilty of a public offense and, upon conviction, shall be punished by imprisonment in the state prison for 16 months, or two or three years, or by a fine of not more than thirty thousand dollars ($30,000), or by both the fine and imprisonment, or by imprisonment in the county jail not exceeding one year or by a fine of not more than one thousand dollars ($1,000) or by both the fine and imprisonment."

Because the offense defined in section 10803, subdivision (b), is punishable as a felony, Cox's no contest plea may be offered in this civil action on remand. (Pen. Code, § 1016, subd. 3; Evid. Code, § 1300.) In its supplemental brief, the CHP continues to maintain that a section 10751(b) hearing is required in this case.

We remand this matter for a hearing on the disposition of the property. (§ 10751, subd. (e).) The effect of Cox's no contest plea can be considered at that time. Whether petitioners suffered prejudice from the delay in scheduling the hearing can also be considered if the contention is renewed.[3]

## DISPOSITION

The judgment granting the petition for writ of mandate is reversed. This matter is remanded for a hearing as provided for by section 10751(b). Each party will pay its own costs of appeal.

Scotland, J., and Nicholson, J., concurred.

---

[3]The court in *People* v. *Cavanna* (1989) 214 Cal.App.3d 1054 [263 Cal.Rptr. 177] concluded that a municipal court lacks subject matter jurisdiction under section 10751 to dispose of an allegedly stolen vehicle if a criminal proceeding involving the vehicle is pending and the vehicle is to be used as evidence in that proceeding. (214 Cal.App.3d at pp. 1056, 1058; see § 10751, subds. (b), (e).) Cox's criminal proceedings involving the two seized Harley-Davidsons at issue have apparently concluded.