[No. C034268. Third Dist. Jan. 5, 2001.]

BOARD OF EDUCATION OF THE SACRAMENTO CITY UNIFIED SCHOOL DISTRICT, Plaintiff and Appellant, v. SACRAMENTO COUNTY BOARD OF EDUCATION, Defendant and Respondent;
KENNETH H., a Minor, Real Party in Interest and Respondent.

1322

## COUNSEL

Law Offices of Hamilton & Young, Spector, Middleton & Young, James E. Young; and Martin Fine for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo and Terry Filliman for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

## OPINION

**CALLAHAN, J.**—Education Code section 48918, subdivision (a) requires school boards that delegate expulsion hearings to an administrative panel to make a decision whether or not to expel a pupil within 40 schooldays after a recommendation for expulsion is first made. In this case, following an administrative hearing on an appeal by the pupil, the Board of Education of the Sacramento City Unified School District (School Board), convening after a summer recess, voted to expel.

The Sacramento County Board of Education (County Board) overturned the School Board's decision. The County Board ruled that the School Board's failure to expel the pupil within 40 schooldays deprived the School Board of jurisdiction; consequently, it reversed the expulsion order. The reversal was upheld by the superior court, which denied the School Board's petition for writ of mandate.

On this appeal, we will determine that the 40-day period under Education Code section 48918 allotted to the School Board to make a decision on expelling a pupil is directory, not mandatory in the jurisdictional sense. (All further unspecified statutory references are to the Education Code.) We will reverse with directions.

### BACKGROUND

The pertinent facts are not in dispute. On April 22, 1999 (all further calendar references are to that year), the pupil, Kenneth H., was suspended for possession of a pipe bomb in violation of those sections of the Education Code that prohibit possession of an explosive or other dangerous objects on school grounds and disruption of school activities. (§ 48900, subds. (b), (k).)

After the School Board granted a request by the pupil's parent for a 15-day postponement, an expulsion hearing was held by an administrative panel of the board on June 15. At the conclusion of the hearing, the panel issued a written decision recommending expulsion of the pupil. The panel's findings of fact and recommendations were sent to and received by the pupil on June 24. On June 29, the School Board adjourned for its summer recess for 15 schooldays. When it returned from summer recess on July 19, the School Board voted to expel the pupil.

The pupil appealed the School Board's decision to the County Board. The County Board reversed the expulsion. In a written decision, it held that (1) the School Board's summer recess did not extend or toll the 40-day period for making a decision on expulsion as set forth in section 48918; (2) the School Board exceeded the 40-day period in rendering its decision in the present case; (3) the time provisions of section 48918 are *mandatory* and *jurisdictional*; and therefore (4) the School Board exceeded its jurisdiction in making the expulsion order.

The School Board filed a petition for writ of administrative mandate, seeking to overturn the County Board's action on the ground that it abused its discretion by failing to proceed in the manner required by law. (Code Civ. Proc., § 1094.5, subd. (b).) Relying exclusively on *Garcia v. Los Angeles County Bd. of Education* (1981) 123 Cal.App.3d 807 [177 Cal.Rptr. 29], the court concurred in the County Board's analysis and denied the writ.

### APPEAL

### I

### *Clarification of Issues*

Section 48918, subdivision (a) creates two time lines for a school board's final decision on expulsion. Where the school board conducts the expulsion hearing itself, the deadline is 10 days from the date the school board

conducted the hearing. Where the hearing is held by an administrative panel, the decision must be made within 40 days after the incident precipitating the pupil's removal.

All parties agree that the lapse of time caused by the parent's request for postponement (10 schooldays)[1] in this case, should not be counted in computing of the time within which a decision on expulsion needed to be made. Since the pupil's hearing was conducted by an administrative panel in this case, the 40-day deadline is the one that applies.

Excluding the period caused by the requested postponement, the School Board calculates that the decision on the pupil's expulsion was conducted 37 schooldays following his suspension. On the other hand, by the County Board's computation, the period was 51 schooldays. The difference is that the County Board counts schooldays during the summer recess and the School Board excludes them. The following table summarizes the discrepancy between the two calculations:

| Event | Date | Number of Schooldays—County Board | Number of Schooldays—School Board |
|-------|------|-----------------------------------|-----------------------------------|
| Student Removal | April 22 | 0 | 0 |
| Expulsion Hearing | June 15 | 27 | 27 |
| School Board's Summer Recess (14 schooldays) | June 29-July 18 | (+14) | (0) |
| Expulsion Decision | July 19 | 51 | 37 |

The trial court agreed with the County Board's position that summer recess schooldays should be counted in computing the 40-day period for decision under section 48918. Using the County Board's time line, the trial court ruled that the decision, rendered on the 51st day after the pupil's removal, was untimely, and that the untimeliness deprived the School Board of jurisdiction over the case.

In light of the twofold aspect to the trial court's ruling, the School Board frames two issues to be decided on this appeal: (1) whether summer recess

[1]The time for holding a hearing and rendering a decision set forth in section 48918 is expressed in terms of "schooldays." A "schoolday" is a term of art defined in section 48925; it includes days that school is in session as well as weekdays during the summer recess. (§ 48925, subd. (c).) Whenever we refer to "days" in the context of pupil disciplinary proceedings, we mean "schooldays" as defined in section 48925.

time should be included in the computation for making a decision on expulsion, and (2) if summer recess time does not toll the deadline, whether the School Board's 11-day delay in rendering a decision deprived it of disciplinary jurisdiction over the pupil's removal.

We will decide that, even if the School Board's decision went beyond the 40-day period set forth in section 48918, the delay did not deprive the School Board of jurisdiction because the decisionmaking deadline set forth in section 48918 is merely directory. Thus, it is unnecessary for us to decide the summer recess tolling issue.[2]

II

*The Decisionmaking Deadline—Mandatory or Directory?*

Section 48918, the construction of which is at the heart of this appeal, provides in pertinent part:

"The governing board of each school district shall establish rules and regulations governing procedures for the expulsion of pupils. These procedures shall include, but are not necessarily limited to, all of the following:

"(a) The pupil shall be entitled to a hearing to determine whether the pupil should be expelled. An expulsion hearing shall be held within 30 schooldays after the date the principal or the superintendent of schools determines that the pupil has committed any of the acts enumerated in Section 48900, unless the pupil requests, in writing, that the hearing be postponed. . . .

". . . If the hearing is held by a hearing officer or an administrative panel, . . . the governing board *shall decide* whether to expel the pupil *within 40 schooldays* after the date of the pupil's removal from his or her school of attendance for the incident for which the recommendation for expulsion is made by the principal or the superintendent, unless the pupil requests in writing that the decision be postponed.

". . . Upon the commencement of the hearing, all matters shall be pursued and conducted with reasonable diligence and shall be concluded without any unnecessary delay." (Italics added.)

---

[2] In 1998 the Legislature amended section 48918, subdivision (a) by providing that if compliance with time requirements *for holding a hearing* on expulsion is impractical due to a school board's summer recess, such time shall not be counted, but says nothing about summer recess extending the deadline for *rendering a decision* on expulsion. (Stats. 1998, ch. 489, § 1.) The summer recess debate boils down to whether the amendment should be read broadly to provide a similar summer recess tolling period for the decisionmaking deadline, or narrowly to provide that only the hearing deadline is tolled by the summer recess.

The issue in this case is whether the failure to render a decision within the 40-day period provided for in section 48918 deprives the School Board of jurisdiction to discipline the pupil. The answer turns on whether the phrase "shall decide" in the above quotation is mandatory or directory.

In *Morris v. County of Marin* (1977) 18 Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606], the state Supreme Court explained the difference between mandatory and directory statutory requirements. "[T]he term 'mandatory' refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses. By contrast, the 'directory' or 'mandatory' designation does not refer to whether a particular statutory requirement is 'permissive' or 'obligatory,' but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates." (*Id.* at p. 908.)

With respect to statutorily prescribed time limits in particular, the high court has articulated the following principles: "Time limits are usually deemed to be directory unless the Legislature clearly expresses a contrary intent. (*Edwards v. Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365].) 'In ascertaining probable intent, California courts have expressed a variety of tests. In some cases focus has been directed at the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment. [Citations.] Other cases have suggested that a time limitation is deemed merely directory "unless a consequence or penalty is provided for failure to do the act within the time commanded." ' (*Ibid.*) As *Morris* v. *County of Marin, supra,* 18 Cal.3d 901, 908, held, the consequence or penalty must have the effect of invalidating the government action in question if the limit is to be characterized as 'mandatory.' " (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1145 [43 Cal.Rptr.2d 693, 899 P.2d 79], italics added (*Peace Officers Assn.*).)

In *Peace Officers Assn.,* our highest court applied these principles when faced with construction of a decisionmaking deadline very similar to the one at bar. Government Code section 18671.1 states that, in all employee disciplinary cases, the state personnel board "shall" render a decision within six months following the date a petition is filed or 90 days from the time the case is submitted, whichever is less. The statute imposed no penalty or consequence for failure to comply with the deadline, but provided that if the

board did not render a decision within the period, the employee "will be deemed to have exhausted all available administrative remedies." (*Peace Officers Assn., supra,* 10 Cal.4th at pp. 1137-1138.)

■ The court first noted that the absence of a sanction for failure to comply with the deadline suggested that the Legislature did not intend to deprive the board of jurisdiction. Rather, by providing that if the board failed to render a decision within the deadline the employee shall be deemed to have exhausted his administrative remedies, the Legislature intended only to allow the employee experiencing the delay with an option to seek judicial relief. (*Peace Officers Assn., supra,* 10 Cal.4th at pp. 1145-1146.)

In a passage noteworthy for its relevance to this case, the court then stated: "*Had the Legislature not included the exhaustion provision in section 18671.1, it would be clear that the time limit is only directory and the aggrieved employee's sole remedy for delay is traditional mandamus* which lies 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station. . . .' (Code Civ. Proc., § 1085.)" (*Peace Officers Assn., supra,* 10 Cal.4th at p. 1146, italics added.) If we took our cue solely from this dictum, the inevitable conclusion is that the decisionmaking deadline in section 48918, subdivision (a) is directory only. The statute contains no penalty for noncompliance, nor is there an exhaustion provision. Thus, applying the principle stated in *Peace Officers Assn.,* the only remedy for the *School Board*'s failure to adhere to the deadline would be a petition for writ of mandate to compel compliance. No loss of jurisdiction would ensue. We need not rely exclusively on the statement, however. Application of a host of other principles yields the same result.

■ Our high court has recognized that " '[S]eemingly mandatory language need not be construed as jurisdictional where to do so might well defeat the very purpose of the enactment or destroy the rights of innocent aggrieved parties. [Citations.] In other words, the provision at issue may be considered mandatory only in the sense that the board "could be mandated to act if it took more time than the short period allotted." ' [Citations.]" (*Peace Officers Assn., supra,* 10 Cal.4th at pp. 1146-1147.) Further, "[i]n construing a statute, a court may consider the consequences that would follow from a particular construction and will not readily imply an unreasonable legislative purpose. Therefore a practical construction is preferred. [Citation.]" (*Id.* at p. 1147.)

The court noted that a construction of the deadline section which permits the board to retain jurisdiction and render a decision (thus making mandate

unnecessary) is more practical and consistent with the legislative purpose of the statute than one "which cuts off the jurisdiction of the Board regardless of the time and resources the parties have already expended in proceedings before the Board." (*Peace Officers Assn., supra,* 10 Cal.4th at p. 1147.)

In this case, the language as well as the overall purpose of section 48918, subdivision (a) convinces us that the 40-day deadline for decision-making should not be construed as mandatory in the jurisdictional sense. Three aspects of the language itself so indicate. First, the statute's failure to impose a prescribed consequence or sanction for the School Board's failure to meet the deadline brings it within the general rule that the "shall" directive was intended to be directory.[3]

Second, section 48918, subdivision (a) permits the pupil to waive the deadline by requesting a postponement, and for an apparently unlimited time period. Such a provision would be inconsistent with a belief by the Legislature that it was imposing an absolute jurisdictional deadline in enacting the 40-day rule. (See *Peace Officers Assn., supra,* 10 Cal.4th at pp. 1145-1146.)

Third, the last sentence of section 48918, subdivision (a) states: "Upon the commencement of the hearing, all matters shall be pursued and conducted with *reasonable diligence* and shall be concluded *without* any *unnecessary delay.*" (Italics added.) By expressing that expulsion proceedings be conducted with "reasonable diligence" and "without any unnecessary delay" following the commencement of a hearing, the Legislature couched its directive to the School Board in precatory language. The manifest objective of such phraseology is to minimize undue procrastination once the expulsion hearing has begun, while not unduly penalizing the schools for administrative oversight in expediting the final decision. The spirit of this passage is wholly at odds with a legislative intent to strip the School Board of *all jurisdiction* to discipline if it fails to meet a given decisionmaking deadline.

We are even more confident about our decision when we take into consideration the consequences that would follow from construing the 40-day period as mandatory. (*Peace Officers Assn., supra,* 10 Cal.4th at p. 1147.) In the present case, under the County Board's interpretation, a school board would lose all jurisdiction over a suspended pupil who has had a full expulsion hearing because the school board missed the deadline for rendering a decision by a few days. The consequence would be to nullify all

---

[3]By contrast, as pointed out in *Peace Officers Assn., supra,* 10 Cal.4th at pages 1147-1148, a good example of language creating a mandatory time deadline is Code of Civil Procedure section 660, which provides that if the court fails to rule on a motion for new trial within the prescribed 60 days, "the effect shall be a denial of the motion without further order of the court."

proceedings that have already occurred and amount to a de facto reinstatement of a pupil who has engaged in a serious violation of school rules and regulations. We doubt the Legislature contemplated such a disquieting result.

## III

### *The Garcia Case*

We now come to *Garcia v. Los Angeles County Bd. of Education, supra,* 123 Cal.App.3d 807 (*Garcia*), the case upon which both the County Board and the trial court relied in construing the 40-day decisionmaking deadline as mandatory.

In *Garcia,* the court held that a 20-schoolday time deadline for *holding an expulsion hearing* under former section 48914 was mandatory rather than directory. Even though the statute did not contain any penalty provision for noncompliance, the appellate court ruled that the hearing deadline affected "matters of substance" rather than of convenience. (*Garcia, supra,* 123 Cal.App.3d at p. 811.) *Garcia* based its ruling on the fact that the deadline was enacted in response to a 1975 United States Supreme Court case (*Goss v. Lopez* (1975) 419 U.S. 565 [95 S.Ct. 729, 42 L.Ed.2d 725]), which held that a student facing expulsion had a due process right to notice of the charges and opportunity for a hearing. (*Garcia, supra,* at pp. 811-812.) The court concluded that the statute effectuated the right expressed in *Goss* to be heard within a reasonably prompt period of time, and attempted to "define the period of delay during which it is reasonable *to* summarily deprive the student of his fundamental right to public education." (*Garcia, supra,* 123 Cal.App.3d at p. 812.)

We do not view *Garcia* as persuasive authority in support of the County Board's position. The right to a prompt expulsion hearing is not of comparable constitutional stature to the right to a decision once the hearing has been held. Unlike the right to a timely hearing, which implicates the need for gathering facts, confronting witnesses while memories are fresh, and providing the student an opportunity to explain his conduct (see *Goss v. Lopez, supra,* 419 U.S. at p. 580, fn. 9 [95 S.Ct. at p. 739, 42 L.Ed.2d at p. 738]), no federal or state decision has been called to our attention which holds that the need for a swift posthearing decision on school expulsion is an essential element of due process. To support such a rule, the County Board relies on the following quotation from *Garcia*: "The time provision for the date by which a decision must be reached is, however, *merely a corrollary* [*sic*] of the right to a timely hearing." (*Garcia, supra,* 123 Cal.App.3d at p. 813,

italics added.) Read in proper context, however, the statement actually underscores our conclusion that the right to a timely hearing takes priority over the right to a decision once the hearing has taken place.[4]

The second reason we find *Garcia* unconvincing is that we doubt its analysis can withstand scrutiny when considered in light of more recent decisions interpreting comparable statutes.

In *Woods v. Department of Motor Vehicles* (1989) 211 Cal.App.3d 1263 [259 Cal.Rptr. 885], the Court of Appeal held that Vehicle Code section 16075, former subdivision (b), which provided the Department of Motor Vehicles "*shall* conduct the hearing upon demand of the driver or owner, within 30 days of such demand, to determine the applicability of [the Financial Responsibility Law] chapter to such driver" (*Woods, supra,* at p. 1266) was not jurisdictional, since such an interpretation would undermine the purpose of the statute, which is to reduce the number of financially irresponsible drivers on the public highway. (*Id.* at p. 1270.)

In *People v. Property Listed in Exhibit One* (1991) 227 Cal.App.3d 1 [277 Cal.Rptr. 672], the court was faced with a statute detailing the procedure for the seizure of property connected with and proceeds traceable to unlawful drug transactions. Health and Safety Code section 11488.4, subdivision (j) provides that the district attorney " '*shall* file a petition of forfeiture' " within 30 days of the receipt of a claim to the property. (227 Cal.App.3d at p. 6, italics in *Property.*) Applying the well-settled precepts we have already referred to, and noting that "an intent to divest the court of jurisdiction by time requirements is not read into a statute unless that result is *expressly provided* or otherwise *clearly intended.* [citation]" (*id.* at p. 8, italics added), the court held that "to construe the 30-day limitation as a mandatory statute of limitations would defeat the legislative intent of the forfeiture statutes which is to strip drug dealers of the tools and profits of their illicit trade. [Citation.]" (*Id.* at p. 10.)

Finally, in *Cox v. California Highway Patrol* (1997) 51 Cal.App.4th 1580 [60 Cal.Rptr.2d 159], this court (per Davis, Acting P. J.) analyzed the

---

[4]The court was responding to the school district's argument that the hearing period was directory because the statute provided that the decision need not be rendered until 35 days after the recommendation for expulsion or 40 days after the suspension. The court said: "The logical result of respondent's argument would be to allow an expulsion hearing to be held at any time within the period allowed for a decision so long as the decision were timely rendered." (*Garcia, supra,* 123 Cal.App.3d at p. 813.) Such a construction, according to *Garcia,* would jeopardize the student's right to a fair and prompt hearing. "To shorten this interim period by allowing the hearing to be set at a later time would create the risk that the *student might be denied the right to a full and fair hearing* reflecting a considered decision. This would defeat the purpose of the statute." (*Ibid.,* italics added.)

mandatory-directory dichotomy in construing Vehicle Code section 10751, which requires that a court hearing be held within 90 days after a peace officer seizes a vehicle from which the vehicle identification number has been removed or defaced. (*Cox, supra,* at p. 1583 & fn. 1.) We held the statute, which failed to prescribe a consequence for noncompliance with the hearing deadline, was merely directory. We observed the purpose of the statute is to ascertain the true owner of a vehicle with altered numbers by allowing law enforcement to investigate, and claimants to establish, that ownership, or to otherwise determine proper ownership. To hold the 90-day period jurisdictional would defeat this purpose by foreclosing law enforcement from investigating any further and by foreclosing a belated claimant from proving satisfactory evidence of ownership. Thus, the failure to hold a hearing within 90 days did not deprive the trial court of jurisdiction. (*Id.* at pp. 1587-1589.)

In sum, the evolution of case law in this subject area convinces us that *Garcia* is no longer controlling authority on its own facts, and is even less persuasive with respect to the decisionmaking deadline prescribed by section 48918, subdivision (a). We think it implausible the Legislature intended to allow a child who has committed an expellable offense and may well pose a serious danger to other students, back into our public schools merely because a school board took longer than the prescribed period to arrive at a decision. Such a result is not only unsupported by the language of the statute, but would impair the constitutional right of all students and staff to safe and secure public schools, a right which was made part of the California Constitution after *Garcia.*[5]

IV

*Conclusion*

Applying sound principles of statutory construction as articulated by the California Supreme Court and recent appellate cases, we find the 40-day deadline prescribed by section 48918, subdivision (a) to be directory only, and not mandatory in the jurisdictional sense. Accordingly, any delay beyond the 40-day statutory deadline for decisionmaking is remediable by petition for writ of ordinary mandamus to compel the School Board to perform its duty. (Code Civ. Proc., § 1085; see *Peace Officers Assn., supra,* 10 Cal.4th at p. 1146.)

---

[5]Article I, section 28, subdivision (c) of the California Constitution, which was enacted in 1982 as part of Proposition 8, provides: "All students and staff of public primary, elementary, junior high and senior high schools have the inalienable right to attend campuses which are safe, secure and peaceful." (See *Rodriguez v. Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 714 [230 Cal.Rptr. 823].)

In the present case, the sole basis for the County Board's decision vacating the expulsion was that the School Board lost jurisdiction because it exceeded the deadline by 11 days. That conclusion was incorrect as a matter of law. Therefore, the superior court should have granted the writ.

Nothing we have said should be taken to imply that a school board may delay a decision on expulsion indefinitely without consequence. In light of the legislative directive in section 48918 to conduct posthearing proceedings promptly and with reasonable diligence, a student whose case has languished for an extended time without resolution would have a credible claim for a due process violation based on the prejudicial effect of the unreasonable delay. (See *People v. Property Listed in Exhibit One*, *supra*, 227 Cal.App.3d at p. 9; *People v. Echols* (1982) 138 Cal.App.3d 838, 842 [188 Cal.Rptr. 328].) Such considerations are not apposite here, however, because the County Board based its ruling strictly on the loss of jurisdiction caused by exceeding the statutory time limit, and there is no claim of actual prejudice as the result of the time lapse in rendering the decision.

## DISPOSITION

The judgment is reversed. The cause is remanded to the trial court with directions to grant the peremptory writ as prayed. The School Board shall recover costs on appeal.

Davis, Acting P. J., and Raye, J., concurred.